PEOPLE *v.* DUNGEY.

Grand Jury—Witnesses—Presence of Attorney.

Conviction and sentences of defendants for conspiracy to violate the laws relating to the suppression of gambling are not set aside by reason of the fact that warrant for arrest of defendants, issued by one-man grand jury, followed his investigation in which a witness before him was denied the right to have his attorney present in the grand jury room while testifying before the one-man grand juror (CLS 1956, § 767.3).

Appeal from Genesee; Baker (John W.), J. Submitted April 16, 1959. (Docket No. 63, Calendar No. 47,831.) Decided July 13, 1959.

Emery Dungey, Henry Adkins, Ewart Clark and Otto Nicholas, on warrant issued by one-man grand

---

References for Points in Headnotes
24 Am Jur, Grand Jury § 42.

jury, were convicted of conspiracy to violate the laws relating to the suppression of gambling. Affirmed.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Jerome F. O'Rourke,* Prosecuting Attorney, *Walter P. Kuta,* Assistant Prosecuting Attorney, for the people.

*Ronald L. Joseph,* for defendants.

CARR, J. The defendants in this case were tried in the circuit court of Genesee county on an information charging them with conspiracy to violate the laws of the State relating to the suppression of gambling. They were convicted by the jury and sentences were imposed. The prosecution followed an investigation conducted in said county by a visiting circuit judge, under the provisions of CLS 1956, § 767.3 (Stat Ann 1954 Rev § 28.943). The statutory provisions involved are commonly referred to as the one-man grand-jury act of the State, and are a part of the code of criminal procedure as enacted by the legislature. The section cited provides, in substance, that on the filing of a complaint or upon the application of the prosecuting attorney or attorney general any judge of a court of law and of record may make an order directing an inquiry into the matters set forth in the complaint or application, such order to indicate the scope of the proceeding. The judge making such order may require the attendance of witnesses and the taking of testimony therefrom. The proceedings for the summoning of witnesses and requiring them to testify are, insofar as possible, identical with those in other criminal proceedings.

No claim is made in the instant case that the proceeding as conducted by the circuit judge was not in accord with the provisions of the statute as

amended by the legislature. Following the taking of proofs the judge issued his warrant for the arrest of 11 individuals, including the 4 defendants in this case, reciting as the basis therefor that there was "just cause to believe," and such belief on the part of the judge, that on divers days between the 15th of April, 1956, and the 1st day of February, 1957, the persons named had conspired among themselves and with others to violate the provisions of certain designated sections of the Michigan criminal code prohibiting gambling and other conduct incidental thereto. The warrant further alleged that the object of the conspiracy was effected by taking and registering "policy, pool and mutuel numbers bets," and the keeping of places for the carrying on of such operations. Following the issuance of the warrant on February 8, 1957, the defendants named therein were taken into custody, a preliminary examination was held, and they were bound over to the circuit court for trial on an information charging conspiracy to violate the gambling laws. It further appears that the case was dismissed as to 1 of the defendants, and 6 pleaded guilty to violations of the law and received sentences. The appellants in this case were tried, with the result above indicated.

No claim is made that the preliminary examination and the trial were not conducted in accordance with the law of the State, or that the rights of the defendants were not properly protected therein. The appeal taken by defendants to this Court is directed wholly to the constitutionality of the provisions of the criminal code relating to inquiries under the section above cited. It is claimed, in substance, that such section violates the 14th Amendment to the Federal Constitution in that it does not provide for due process of law, and that it also offends article 2, § 10, of the Constitution of Michigan (1908), as amended in 1952, which section has reference to the

issuance of warrants as the bases of searches and seizures.

The arguments advanced on behalf of appellants do not relate in any way to alleged prejudicial invasion of their rights other than by the investigation under the statute by the circuit judge and the subsequent issuance of the warrant. Rather, the statute is assailed on the basis of the policy and wisdom of the legislative enactment and occurrences that might take place in proceedings under it. Primarily, it is asserted that the law vests too much power in the judge conducting a one-man grand-jury investigation. The right of the State to provide for a grand jury composed of a number of individuals is not questioned, but it is insisted, in effect, that a State may not provide for an investigation of alleged criminal activities in a judicial inquiry conducted by the judge of a court of record. Such argument rests solely on the theory that the authority granted may be abused. Such a claim might obviously be made with reference to possible acts of officials generally, acting pursuant to legislative authority in the performance of public functions. It may not be assumed, however, that such an official will abuse his prerogatives, and if he does so an aggrieved party is not without remedy.

In view of appellants' argument the statement of Mr. Justice Frankfurter in *In re Groban,* 352 US 330, 335–337 (77 S Ct 510, 1 L ed 2d 376), is significant. Involved there was a statute of the State of Ohio providing for investigations of fires by the State fire marshal. Said statute authorized the fire marshal to summon witnesses and take testimony, with authority to punish for refusing to testify. It was further provided that the investigation might be private, and that all persons other than those required to be present might be excluded. The appellants in the case refused to testify without having

their attorney with them. By a divided court the supreme court of the United States sustained the decision of the supreme court of Ohio upholding the statute. With reference to arguments that had been advanced by counsel for petitioners, Justice Frankfurter said, in part:

"To whatever extent history may confirm Lord Acton's dictum that power tends to corrupt, such a doctrine of fear can hardly serve as a test, under the due process clause of the Fourteenth Amendment, of a particular exercise of a State's legislative power. And so, the constitutionality of a particular statute, expressive of a State's view of desirable policy for dealing with one of the rudimentary concerns of society—the prevention of fires and the ascertainment of their causes—and directed towards a particular situation, cannot be determined by deriving a troupe of hobgoblins from the assumption that such a particularized exercise of power would justify an unlimited, abusive exercise of power.

"If the Ohio legislation were directed explicitly or by obvious design toward secret inquisition of those suspected of arson, we would have a wholly different situation from the one before us. This is not a statute directed to the examination of suspects. It is a statute authorizing inquiry by the chief guardian of a community against the hazards of fire into the causes of fires. To be sure, it does not preclude the possibility that a suspect might turn up among those to be questioned by the fire marshal. But the aim of the statute is the expeditious and expert ascertainment of the causes of fire. The fire marshal is not a prosecutor, though he may, like others, serve as a witness for the prosecution. In various proceedings, as for instance under some workmen's compensation laws, the presence of lawyers is deemed not conducive to the economical and thorough ascertainment of the facts. The utmost devotion to one's profession and the fullest recognition of the great role of lawyers in the evolution

of a free society cannot lead one to erect as a constitutional principle that no administrative inquiry can be had *in camera* unless a lawyer be allowed to attend.

"The assumption that as a normal matter such an inquiry carries with it deprivation of some rights of a citizen assumes inevitable misuse of authority. For good reasons, and certainly for constitutional purposes, the contrary assumption must be entertained. The potential danger most feared is that it will invade the privilege against self-incrimination in States where it is constitutionally recognized. But that privilege is amply safeguarded by the decision of the supreme court of Ohio in this case. We are not justified in invalidating this Ohio statute on the assumption that people called before the fire marshal would not be aware of their privilege not to respond to questions the answers to which may tend to incriminate. At a time when this privilege has attained the familiarity of the comic strips, the assumption of ignorance about the privilege by witnesses called before the fire marshal is too far-fetched an assumption on which to invalidate legislation."

Of like import are the comments of Mr. Justice Frankfurter in *In re Oliver,* 333 US 257 (68 S Ct 499, 92 L ed 682), which involved a contempt proceeding resulting from a judicial investigation under the one-man grand-jury act of Michigan. With reference to the power of the State to enact the statute here involved, the Justice said (pp 283, 284):

"Under the Fourteenth Amendment, a State may surely adopt as its own a procedure which was the established method for prosecuting crime in nearly half the States which ratified that amendment. And so, it may abolish the grand jury, or it may reduce the size of the grand jury, and even to a single member. A State has great leeway in devising its judicial instruments for probing into conduct as a basis

for charging the commission of crime. It may, at the same time, surround such preliminary inquiry with safeguards, not only that crime may be detected and criminals punished, but also that charges may be sifted in secret so as not to injure or embarrass the innocent."

We are not unmindful of the fact that a majority of the United States supreme court concluded that Oliver had been improperly adjudged in contempt of court because of the procedure observed in his case. Such conclusion did not affect the constitutionality of the statute as a whole, particularly in view of the fact that the legislature had not undertaken to specify in said statute the procedure to be followed in a contempt matter arising in connection with the statutory inquiry.

This Court has heretofore recognized the constitutionality of the provisions of the Michigan criminal code providing for a one-man grand jury. In the case of *In re Slattery,* 310 Mich 458, attention was directed to prior decisions holding that a circuit judge in conducting an inquiry under the statute was acting in a judicial capacity. The arguments advanced against the validity of the legislative enactment were considered at some length and rejected. The Supreme Court of the United States denied a petition for writ of certiorari to review the case. 325 US 876 (65 S Ct 1553, 89 L ed 1993).

The section of the criminal code, above cited, specifically provides that:

"Any person called before the grand jury shall at all times be entitled to legal counsel not involving delay and he may discuss fully with his counsel all matters relative to his part in the inquiry without being subject to a citation for contempt. All matters so revealed to the attorney shall be subject to the requirements of secrecy in section 4, and any revela-

tion thereof by the attorney shall make him subject to punishment as provided in said section."

This provision of the statute was considered in *In re White,* 340 Mich 140, where it was held that the statute did not mean that a witness had the right to have his attorney with him while testifying, but, rather, that he was entitled to consult an attorney with reference to his part in the inquiry and his rights as a witness, before and after entering the jury room, and at intermissions in the course of the inquiry in the discretion of the judge conducting same. The statute as so interpreted adequately protects the right of a witness.

In *People* v. *Lauder,* 82 Mich 109, it was held that a witness testifying before a 23-man grand jury was not entitled to have the assistance of counsel inasmuch as he was not upon trial for any offense. A witness in such a proceeding may obviously claim the privilege of refusing to give testimony that will tend to incriminate him. As Mr. Justice Frankfurter pointed out in the excerpt, above quoted, from his opinion in the *Groban Case, supra,* it may not be assumed that witnesses are not informed as to their right to make answers to questions that will tend to disclose guilt of a crime or otherwise debase or degrade the witness. The claim that the statute here involved does not provide for due process of law because a witness may not take his attorney with him into the grand-jury room is not tenable. Neither is it a valid objection to the statute that a witness may indulge in conduct rendering him guilty of contempt. If his rights with reference to the trial of such a charge against him are not safeguarded, he, as in any other case, has his remedy by proper review.

Complaint is also made that the proceedings before the judge of a court of record under the statute are

secret. It is insisted that the inquiry may not be properly regarded as a grand-jury proceeding, it being conceded that such a proceeding must necessarily be secret for reasons of public policy. However, no provision of either State or Federal Constitutions forbids the legislature to provide a method of inquiry for the investigation of claims of criminal conduct, in addition to the 23-man grand-jury procedure. The same reasons deemed essential to a proceeding of the latter nature likewise obtain where the inquiry is conducted by a judge acting in his judicial capacity. If this were not so the purpose of the inquiry might be defeated as a result of publicity. The difficulty of obtaining the attendance of desired witnesses would also be increased. Furthermore, an inquiry of the nature here under consideration, like a 23-man grand-jury proceeding, may well involve persons not guilty of any violation of the law, but concerning whom rumors have been circulated tending to raise questions in such respect. Secrecy is requisite for the protection of the innocent as well as for the effective conducting of the investigation.

In the main the arguments advanced by counsel for appellants present nothing of a material nature that has not been carefully considered in prior decisions relating to the one-man grand-jury act, the constitutionality of which this Court has recognized in several cases, including *People* v. *Hancock,* 326 Mich 471, 491. In *People* v. *Pickett,* 339 Mich 294 (45 ALR2d 1341), the conviction of the defendants on a charge of conspiracy to violate the gambling laws of the State was affirmed, the Court holding that objections that defendants had been deprived of constitutional rights were not well-founded. Writ of certiorari was denied by the Supreme Court of the United States. *Pickett* v. *Michigan,* 349 US 937 (75 S Ct 781, 99 L ed 1266). We find that there is no merit in the claim that the statute in question is

in any of the particulars argued in violation of the 14th Amendment to the Federal Constitution, and that the legislature of the State did not exceed its authority in the enactment thereof and the amendments thereto. As before noted, we are not here confronted with a situation involving claims of specific prejudicial acts, in the course of the proceedings against the appellants, in violation of their constitutional or statutory rights.

It is further urged that the statute is in violation of article 2, § 10, of the State Constitution (1908), as amended in 1952, which provides that:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation."

Like claim was made in *People* v. *Kert,* 304 Mich 148, which resulted from a one-man grand-jury proceeding. Defendant claimed that the warrant issued against him was in violation of the provisions of the section of the Constitution quoted. It was held, however, that said section refers entirely to unlawful searches and seizures, and that it had nothing to do with the procedure in the case.

Attention is also directed to the fact that the warrant of the grand jury in the instant case used the term "just cause," rather than "probable cause." We do not think the variation in terms was material. As pointed out in the brief for the people, the statute* does not prescribe the form of the warrant that the grand juror may issue if he is satisfied that an offense has been committed and has probable cause to suspect any person or persons to be guilty thereof. It states that the judge may "cause the apprehen-

---

* CLS 1956, § 767.4 (Stat Ann 1954 Rev § 28.944).—REPORTER.

sion· of such person or persons by proper process." In. any event, the term "just cause" is broader in its implications than the term that appellants claim should have been used. It does not appear that the question was raised in the trial court and, in any event, we think it without merit. A somewhat analogous question in a civil action was involved in *King* v. *Neller*, 228 Mich 15. There the trial judge in charging the jury trying an action for damages for personal injury indicated that future damages might be allowed if the jury found that "in all probability" such damages would be sustained. The expression was inadvertently used in the form quoted, the general rule being, as recognized in prior decisions of this Court, that such damages must be found "to a reasonable certainty." Verdict for the plaintiff was sustained, however, this Court concluding that the charge was more favorable to defendant than that to which he was entitled.

On the record before us we conclude that appellants were not· deprived of due process of law in the proceedings against them, that the one-man grand-jury act is not unconstitutional for the reasons advanced, and that the provision of the Michigan Constitution, above cited, was not violated by the legislature in the enactment of the statute. The convictions and sentences are affirmed.

Dethmers, C. J., and Kelly, and Kavanagh, JJ., concurred with Carr, J.

Smith, J. (*concurring*). We do not agree with much of what Mr. Justice Carr has written with respect to the so-called one-man grand jury. We do agree with him, however, that "we are not here confronted with a situation involving claims of specific judicial acts, in the course of the proceedings against the appellants, in violation of their constitu-

tional or statutory rights." Questions of grave constitutional moment, as was said by Mr. Justice BLACK,* quoting from the supreme court of the United States, "are not to be entertained upon dubious presentations."

Upon the record before us the convictions and sentences must be affirmed.

BLACK, EDWARDS, and VOELKER, JJ., concurred with SMITH, J.

---

* *Taunt* v. *Moegle,* 344 Mich 683, 686, quoting *Aircraft & Diesel Equipment Corp.* v. *Hirsch,* 331 US 752, 763 (67 S Ct 1493, 91 L ed 1796).