## CROWE v. COUNTY OF WAYNE.

Counties—Oath of Allegiance—Back Salary—Delay—Constitutional Law.

> County employee who was removed for failure to take oath of allegiance which included a disclaimer of being a Communist, but who delayed 3 years and 4 months after discharge before seeking back salary, *held*, not entitled to recover such salary by Dethmers, C. J., and Carr and Kelly, JJ., both because discharge was proper and because of long delay in asserting right to salary; by Kavanagh, Souris, and Otis M. Smith, JJ., because of abandonment of claim through long delay; and by Black, J., because determination of county civil service commission upholding her discharge for stated cause was *res judicata* of the validity and propriety of such discharge and because the constitutional question was not properly presented for determination by the Supreme Court.

Appeal from Wayne; Borchard (Fred J.), J., presiding. Submitted October 18, 1961. (Docket No. 97, Calendar No. 49,211.) Decided March 16, 1961.

Petition by Anna S. Crowe for back salary after her discharge as Wayne county employee for refusal to sign oath of allegiance denying her identity as a Communist. Claimant appealed to circuit court naming as defendants the County of Wayne, a body politic, Board of Wayne County Auditors, and the individual members thereof. Judgment for defendants. Plaintiff appeals. Affirmed.

---

References for Points in Headnote
10 Am Jur, Civil Service § 17.

*Harry Kobel* and *Harold Norris,* for plaintiff.

*Samuel H. Olsen,* Prosecuting Attorney, *Aloysius J. Suchy* and *F. Clifton Lind,* Assistant Prosecuting Attorneys, for defendants.

CARR, J. By resolution adopted April 11, 1950, the board of supervisors of Wayne county prescribed the form of an oath of allegiance to be taken by county employees, in terms requiring each taker thereof to swear or affirm that he would support the Constitution of the United States and the Constitution of Michigan, and that he would faithfully perform the duties of his position as an employee of Wayne county to the best of his ability. Said resolution was amended on July 30, 1953, by adding thereto a sentence reading as follows:

*"I further do solemnly swear (or affirm) that I am not a Communist."*

The amended resolution further requested the civil service commission of the county to adopt the form of oath therein set forth in place of the previously used form. The commission complied with the request.

Under the rules and regulations of the civil service commission previously adopted in May, 1950, failure to subscribe to the oath of allegiance required of all employees was listed as a ground for suspension, demotion, or removal. Prior to August 19, 1953, Mrs. Anna S. Crowe, plaintiff in this action, had been for several years an employee in the office of the Wayne county treasurer. When requested to take the oath as precribed by the amended resolution of the board of supervisors she refused to do so. In consequence she was discharged, whereupon she left the office and proceeded immediately to take an appeal to the civil service commission. In ac-

cordance with her request a hearing was had before the commission on September 2, 1953, at which Mrs. Crowe testified at some length in her own behalf and stated reasons for her refusal to take the oath as prescribed. Following the hearing, under date of September 3, 1953, the commission entered an order sustaining the action of the county treasurer in dismissing Mrs. Crowe as an employee in his office.

It does not appear that there were any further proceedings instituted by Mrs. Crowe until January 3, 1957, when she filed a petition with the board of auditors of Wayne county reciting her employment in the office of the treasurer, her refusal to take the oath prescribed for county employees, her discharge, and the subsequent affirmance of such action by the civil service commission. Asserting that her discharge was wrongful, she asked by way of relief that she be granted salary from August 19, 1953, at the rate of $3,924 per annum, together with interest, and such additional sums as might be due to her for vacation pay, longevity pay increases, sick leave pay, and holiday pay. The board of auditors rejected the claim on March 28, 1957, and thereupon Mrs. Crowe appealed to the circuit court of Wayne county.

Defendants filed answer to the claim of appeal, denying plaintiff's claim that the requirement with reference to the taking of the oath violated her constitutional rights or was for any other reason invalid. It was also pleaded by way of affirmative defense that plaintiff was guilty of laches because of her delay in filing the petition with the board of auditors, that she had failed to seek review of the order of the civil service commission by writ of certiorari, and that the appeal to the circuit court constituted a collateral attack on the order of the commission.

The trial of the case in circuit court began on October 24, 1958. Mrs. Crowe was a witness in her own behalf, testifying at some length as to her employment in the county service and her refusal to take the oath as prescribed by the resolution of the board of supervisors. In substance she indicated that her refusal to take the oath was based on the inclusion of the statement that she was not a Communist. Following the conclusion of the hearing the trial judge filed a written opinion, rejecting the claim made by plaintiff that the oath was vague and indefinite, and that it violated the due process clause of the Federal Constitution. The Court further concluded that the board of supervisors had acted within the limits of its authority in prescribing the oath, and that plaintiff's delay, following the affirmance of her discharge by the civil service commission, for the period indicated constituted an acquiescence in the discharge and abandonment of any rights that she may have had. An order was accordingly entered affirming the action of the board of auditors of the county. From such order plaintiff has appealed to this Court.

On behalf of appellant it is contended that the form of oath submitted to her contravened the due process clause of the Federal Constitution because of failure to specifically refer therein to the elements of knowledge and intent, that it was indefinite, failed to provide proper standards, and abridged freedom of speech. The claim made involves a consideration of the exact form of the oath as prescribed, which read as follows:

"I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of my position as an employee with the government of Wayne county, according to the best of my ability.

*"I further do solemnly swear (or affirm) that I am not a Communist."*

It will be noted that the language of the required oath is not involved, or in any respect equivocal. The argument made is directed against the statement that the employee is not a Communist. The term in question is one of common use and we think it may be assumed that citizens of this country understand its significance, and that the ordinary individual, possessing the degree of intelligence evidenced by Mrs. Crowe as a witness in her own behalf on the trial of the case and in the prior hearing before the civil service commission, is fully aware whether he is a Communist or belongs to the Communist party. Certainly if one is a member of such party he is aware of that fact. It will be noted that the oath does not contain any references to "subversive organizations," or language of like nature. Based on the record before us we do not think that it may be claimed that Mrs. Crowe refused to sign the oath because she did not understand it.

On the hearing before the commission plaintiff was questioned by an assistant prosecuting attorney of the county, as well as by members of the commission. The following excerpts from her testimony are suggestive of her reasons for refusing to take the oath, and also of her understanding thereof:

*"Mr. Taylor:* I said, do you understand that the oath is not aimed at your personal intellectual beliefs as such, but rather at connections with, and membership in organizations which are so connected with the Russian Communist party as to be subversive in nature?

*"Mrs. Crowe:* Well, the reason that I didn't sign the oath is because I believe it is interference in personal, political, and religious beliefs.

*"Mr. Taylor:* I am not speaking of your individual beliefs as such, I am speaking of your connections.

I mean, the oath is directed at organizational activities, do you understand that?

"*Mrs. Crowe:* Yes, I do, though I do not agree with the purpose and intent of the oath.

"*Mr. Taylor:* Do you understand that the oath is directed at knowing membership in groups which are subversive in nature?

"*Mrs. Crowe:* Yes, I do understand that, and flowing from that I believe the requirement of that kind of oath is not constitutional. * * *

"*Mr. Taylor:* Well, I mean, is it your position that we may not legally require of you or ask you to take an oath certifying to the fact that you do not knowingly belong to an organization which may have as some of its purposes, subversive activity or the overthrow of this government by force and violence?

"*Mrs. Crowe:* Yes, that is my position. * * *

"*Mr. Taylor:* May I ask this question? You understand the form of government we are living in?

"*Mrs. Crowe:* Yes, sir.

"*Vice Chairman Martin:* And that is by the people and for the people, do you understand that?

"*Mrs. Crowe:* Yes.

"*Vice Chairman Martin:* And elected or appointed, the people in any form of government or any branch of government have the right to make rules and regulations.

"*Mrs. Crowe:* Yes, I do understand that.

"*Vice Chairman Martin:* All right.

"*Mrs. Crowe:* But my question is what kind of regulations and what do they entail? Will the commission admit that there is a period of hysteria in our society?

"*Vice Chairman Martin:* I don't get you.

"*Mrs. Crowe:* I say, will the commission admit that there is a period of hysteria in our society?

"*Commissioner Burns:* That has nothing to do with this at all. We are not going to get into serious debates. The question before us is did you refuse to sign that oath?

"*Mrs. Crowe:* May I go on to the next point on why I refused to sign the oath?

· "*Commissioner Burns:* Surely.

"*Mrs. Crowe:* As I stated in my letter to the commission, I refused to sign the oath because this would be the end of civil service protection. I put in my letter something to the effect that, in view of the broadness of this oath, in view of the fact that the full force of the oath has not been felt yet, who are we to assume that the period—I grant that there is a period of hysteria. I saw it in action in the county treasurer's office when I refused to sign the oath. I mentioned in the letter the 1954 senatorial and the 1956 presidential campaigns. To me, this is the foot in the door for the destruction of civil service. Whatever reasons, or excuses you have, I have been in political offices since 1937. I have addressed envelopes, I have made telephone calls, I have canvassed, I have challenged in the elections, I supported Mr. Stoll and those people like him.

"I would like to ask Mr. Stoll 1 question at this time, if I may. Is Mr. Stoll carrying the ball for 'McCarthyism' in Wayne county?

"*Commissioner Burns:* Mrs. Crowe, will you please confine your activities and stop making innuendoes. If you have anything to say relative to the question of why you did not sign the oath—that is the question before us. Now, I am going to ask you a question.

"From your knowledge now, would you agree to sign the oath at this time?

"*Mrs. Crowe:* No, sir, I would not."

Without quoting further from Mrs. Crowe's testimony, we think that the record made in circuit court, as well as that before the civil service commission, discloses beyond question that she understood the nature and purpose of the oath and that she was not uncertain as to the meaning of the language used. On the whole her testimony suggests the conclusion that her refusal to take the oath resulted

from her opinion that the requirement was in violation of her personal and political rights, and that, for some reason not expressed, it was inconsistent with the basic principles of civil service.

Counsel for appellant rely on the decision of the United States supreme court in *Wieman* v. *Updegraff*, 344 US 183 (73 S Ct 215, 97 L ed 216). Involved there was the constitutionality of a statute of the State of Oklahoma prescribing the form of oath to be taken by all State officers and employees. Said oath contained the following provision:

"And I do further swear (or affirm) that I do not advocate, nor am I a member of any party or organization, political or otherwise, that now advocates the overthrow of the Government of the United States or of the State of Oklahoma by force or violence or other unlawful means; That I am not affiliated directly or indirectly with the Communist party, the Third Communist International, with any foreign political agency, party, organization, or government, or with any agency, party, organization, association, or group whatever which has been officially determined by the United States attorney general or other authorized agency of the United States to be a Communist front or subversive organization; nor do I advocate revolution, teach or justify a program of sabotage, force or violence, sedition or treason, against the Government of the United States or of this State; nor do I advocate directly or indirectly, teach or justify by any means whatsoever, the overthrow of the Government of the United States or of this State, or change in the form of Government thereof, by force or any unlawful means; that I will take up arms in the defense of the United States in time of War, or National Emergency, if necessary; that within the 5 years immediately preceding the taking of this oath (or affirmation) I have not been a member of the Communist party, the Third Communist International, or of any agency, party, organization, association, or

group whatever which has been officially determined by the United States attorney general or other authorized public agency of the United States to be a Communist front or subversive organization, or of any party or organization, political or otherwise, that advocated the overthrow of the Government of the United States or of the State of Oklahoma by force or violence or other unlawful means."

The supreme court of Oklahoma, in upholding the statute, construed it* as referring to membership in organizations on the list or lists prepared by the attorney general of the United States, as indicated in the language above quoted. The Federal supreme court, in reversing the case, pointed out (p 187) that such interpretation "discarded clear language of the oath as surplusage," and further pointed out that the State court had denied to appellants the right to take the oath as so interpreted. In commenting on the situation, it was said (p 190) :

"In addition, a petition for rehearing which urged that failure to permit appellants to take the oath as interpreted deprived them of due process was denied. This must be viewed as a holding that knowledge is not a factor under the Oklahoma statute. We are thus brought to the question touched on in *Garner, Adler,* and *Gerende:*† whether the due process clause permits a State, in attempting to bar disloyal individuals from its employ, to exclude persons solely on the basis of organizational membership, regardless of their knowledge concerning the organizations to which they had belonged. For, under the statute before us, the fact of membership alone disqualifies. If the rule be expressed as a presumption of disloyalty, it is a conclusive one.

---

* See *Board of Regents of Oklahoma Agricultural Colleges* v. *Updegraff,* 205 Okla 301 (237 P2d 131).—Reporter.

† *Garner* v. *Board of Public Works of Los Angeles, post; Adler* v. *Board of Education of the City of New York, post; Gerende* v. *Board of Supervisors of Elections of Baltimore, post.*—Reporter.

"But membership may be innocent. A State servant may have joined a proscribed organization unaware of its activities and purposes. In recent years, many completely loyal persons have severed organizational ties after learning for the first time of the character of groups to which they had belonged. 'They had joined, [but] did not know what it was, they were good, fine young men and women, loyal Americans, but they had been trapped into it—because one of the great weaknesses of all Americans, whether adult or youth, is to join something.' At the time of affiliation, a group itself may be innocent, only later coming under the influence of those who would turn it toward illegitimate ends. Conversely, an organization formerly subversive and therefore designated as such may have subsequently freed itself from the influences which originally led to its listing."

The form of the oath prescribed by the Oklahoma statute contained language referring generally to organizations in designated lists, and to parties, organizations, associations or groups subversive in nature, and particularly specifying that the affiant is not a member "of any agency, party, organization, association, or group." As suggested in the opinion of the court, the statute was held invalid primarily on the ground that one might innocently belong to such an organization without knowledge of its actual purpose and objectives. We cannot agree that the form of oath required to be taken of public employees of Wayne county is open to any such objection. As before suggested, one who is competent to render proper service in public employment may be assumed to know whether he is a member of the Communist party and whether he is in fact a Communist. It may be noted also that at the conclusion of the hearing before the civil service commission Mrs. Crowe, in answer to a question of 1 of the commissioners, stated positively that she would not take the oath.

As pointed out in the opinion of the court in the *Wieman Case,* opportunity to take the oath there involved, following its interpretation by the Oklahoma supreme court, was denied.

The court, in holding invalid the Oklahoma statute involved in the *Wieman Case,* referred to certain prior decisions, including *American Communications Assn.* v. *Douds,* 339 US 382 (70 S Ct 674, 94 L ed 925). Involved there was the validity of a provision of the national labor relations act,* as amended in 1947, set forth in section 9(h). Said section provided in substance that a petition by a labor organization for an investigation for certain purposes should not be entertained by the national labor relations board unless there was on file with said board an affidavit executed within the prior year by each officer of such labor organization, and by the officers of the national or international labor organization of which it was an affiliate, setting forth that the affiant was:

"not a member of the Communist party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods."

It will be noted that the form of oath set forth in the Federal statute referred to membership in the Communist party and affiliation with such party. Obviously the language used by the Congress was based on the assumption that one required to take the oath would understand the nature and purpose of the Communist party and would know whether he was affiliated therewith. The situation in this respect is analogous to that presented in the case at bar.

---

* 61 Stat 136, 146, 29 USC (1958 ed), §§ 141, 159(h).

In upholding the statute the supreme court held that those subjected to the taking of the oath exercised authority of such nature that the public interest required them to act in good faith. It was further pointed out that the Congress had not attempted to restrain the activities of a political organization nor to stifle beliefs. So, in the case now before us, we think it may be likewise said that the oath as prescribed does not involve the right of free speech or the right of one to form his own opinions. Rather, the requirement as to the taking of the oath is predicated on the theory that one who is a Communist and a member of that party is not in position to render to the public the kind and character of service that may be expected from him.

In *Garner* v. *Board of Public Works of Los Angeles,* 341 US 716 (71 S Ct 909, 95 L ed 1317), there was involved an ordinance of the city, adopted in 1948 pursuant to legislative authority, requiring the taking of an oath, by those holding an office or position in the service of the city, stating nonmembership in, or nonaffiliation with, any group, society, association, organization or party advocating by force the overthrow of the government of the United States or of the State of California. The language of the oath prescribed by the Los Angeles ordinance was much broader than that involved in the case at bar. Plaintiffs had been discharged for failure to execute the required affidavit, and brought suit for reinstatement and to recover unpaid salaries. The State court denied relief, and the United States supreme court affirmed the decision. The following excerpt from the opinion of the majority of the court, written by Mr. Justice Clark (who wrote also the opinion in the *Wieman Case*), indicated the interpretation that should be given to the prescribed oath, saying in part (pp 723, 724):

"Nor are we impressed by the contention that the oath denies due process because its negation is not limited to affiliations with organizations known to the employee to be in the proscribed class. We have no reason to suppose that the oath is or will be construed by the city of Los Angeles or by California courts as affecting adversely those persons who during their affiliation with a proscribed organization were innocent of its purpose, or those who severed their relations with any such organization when its character became apparent, or those who were affiliated with organizations which at one time or another during the period covered by the ordinance were engaged in proscribed activity but not at the time of affiant's affiliation. We assume that scienter is implicit in each clause of the oath. As the city has done nothing to negative this interpretation, we take for granted that the ordinance will be so read to avoid raising difficult constitutional problems which any other application would present. *Fox* v. *State of Washington* (1915), 236 US 273, 277 (35 S Ct 383, 59 L ed 573). It appears from correspondence of record between the city and petitioners that although the city welcomed inquiry as to its construction of the oath, the interpretation upon which we have proceeded may not have been explicitly called to the attention of petitioners before their refusal. We assume that, if our interpretation of the oath is correct, the city of Los Angeles will give those petitioners who heretofore refused to take the oath an opportunity to take it as interpreted and resume their employment."

In the case at bar, plaintiff, as before noted, although not professing any lack of knowledge as to the meaning of the term "communist," told the civil service commission of the county, in response to a question, that she would not take the oath. Because of the simplicity of the form of such oath, it would seem to be scarcely possible that anyone in the public service, or aspiring to enter such service, could

fail to understand its meaning. In accord with
*Garner* is the decision in *Gerende* v. *Board of Super-
visors of Elections of Baltimore,* 341 US 56 (71 S Ct
565, 95 L ed 745).

In *Lerner* v. *Casey,* 357 US 468 (78 S Ct 1311, 2
L ed 2d 1423), there was involved the validity of ap-
pellant's dismissal from his position as a subway
conductor in the New York City transit system. The
security risk law of the State of New York, as
enacted in 1951, authorized the State civil service
commission to classify any bureau or agency within
the State as a "security agency," which was defined
as any unit of government wherein functions were
performed necessary to the security or defense of the
nation and the State. Pursuant to the statute the
New York City transit authority was determined to
be a security agency. The Communist party of the
United States was listed as a "subversive group."

In the course of an investigation conducted pur-
suant to the State statute, the appellant was called
to the office of the commissioner of investigation of
New York City. Inquiry was made of him if he
was at that time a member of the Communist party.
He refused to answer the question, claiming privi-
lege under the Fifth Amendment to the Federal
Constitution. He was advised of the provisions of
the security risk law and was given time to recon-
sider his refusal to answer. However, he persisted
in such refusal. Thereupon he was suspended with-
out pay. He did not appeal to the civil service
commission, as was his statutory right, but insti-
tuted suit in a State court to compel his reinstate-
ment as a subway conductor in the city transit sys-
tem. The New York courts rendered adverse
decisions.

On appeal the United States supreme court sus-
tained the State courts on the ground that appellant
was dismissed from his employment on a finding that

he was "of doubtful trust and reliability," and therefore a security risk. In affirming (pp 475, 476) the decision of the court of appeals of the State of New York, the opinion thereof was construed as based on the fact that doubt was created as to the employee's reliability because of the refusal to answer a relevant question. The State court pointed out that no inference of membership in the Communist party was drawn from the refusal to answer the question, but, apparently concluded that a finding as to whether the employee was trustworthy and reliable could properly be based on his lack of frankness. The supreme court, in its opinion, said, in part (pp 476–478):

"Accepting, as we do, these premises of the State court's opinion, we find no constitutional block to its decision sustaining appellant's dismissal from employment. Postponing for the moment the question whether appellant was entitled to rely in this local investigation on the Federal privilege, it seems clear that the discharge here in any event was unlike that in *Slochower* v. *Board of Higher Education of New York City,* 350 US 551 (76 S Ct 637, 100 L ed 692), in that, as definitively interpreted by the court of appeals, it was not based on the fact that the employee had asserted Fifth Amendment rights. Further, in *Slochower* such a claim had been asserted in a Federal inquiry having nothing to do with the qualifications of persons for State employment, and the court in its opinion carefully distinguished that situation from one where, as here, a State is conducting an inquiry into fitness of its employees. Nor, as the court of appeals stressed, was the claim of possible self-incrimination made the basis for an inference that appellant was a Communist and therefore unreliable. Hence we are not faced here with the question whether party membership may rationally be inferred from a refusal to answer a question directed to present membership where the refusal

rests on the belief that an answer might incriminate, cf. *Adamson* v. *California,* 332 US 46 (67 S Ct 1672, 91 L ed 1903, 171 ALR 1223), or with the question whether membership in the Communist party which might be 'innocent' can be relied upon as a ground for denial of State employment. *Cf. Wieman* v. *Updegraff, supra; Konigsberg* v. *State Bar of California,* 353 US 252 (77 S Ct 722, 1 L ed 2d 810); *Schware* v. *Board of Bar Examiners of New Mexico,* 353 US 232 (77 S Ct 752, 1 L ed 2d 796, 64 LRA2d 288).

"We think it scarcely debatable that had there 'been no claim of Fifth Amendment privilege, New York would have been constitutionally entitled to conclude from appellant's refusal to answer what must be conceded to have been a question relevant to the purposes of the statute and his employment, cf. *Garner* v. *Board of Public Works of Los Angeles, supra,* that he was of doubtful trust and reliability. Such a conclusion is not 'so strained as not to have a reasonable relation to the circumstances of life as we know them.' *Tot* v. *United States,* 319 US 463, 468 (63 S Ct 1241, 87 L ed 1519). This Court pointed out in *Garner* that a government employee can be required upon pain of dismissal to respond to inquiry probing into matters relevant to his employment, and that present membership in the Communist party is such a matter."

In accord with the above decision is *Beilan* v. *Board of Public Education, School District of Philadelphia,* 357 US 399 (78 S Ct 1317 and 1324, 2 L ed 2d 1414 and 1433). There the plaintiff was discharged for "incompetency" for the reason that he refused to answer questions asked by his superintendent relating to possible Communistic affiliations. The supreme court of Pennsylvania upheld the dismissal, 386 Pa 82 (125 A2d 327). On appeal the supreme court of the United States affirmed, saying in substance that being engaged as an employee in the public schools plaintiff assumed obligations of

frankness, candor, and cooperation in answering questions bearing on his fitness as a public school teacher.

In the opinion in the *Beilan Case* the court cited *Adler* v. *Board of Education of the City of New York,* 342 US 485 (72 S Ct 380, 96 L ed 517, 27 ALR 2d 472). Involved therein was a provision of the civil service law of the State of New York declaring ineligible for employment in any public school any member of an organization advocating the overthrow of the government by force or any other unlawful means. Other statutory provisions authorized the adoption of rules for the removal of any employee ineligible under such provision. In sustaining the State statute the majority opinion of the court, written by Mr. Justice Minton, quoted from *Garner* v. *Board of Public Works of Los Angeles, supra,* 720, as follows (pp 492, 493):

" 'We think that a municipal employer is not disabled because it is an agency of the State from inquiring of its employees as to matters that may prove relevant to their fitness and suitability for the public service. Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust. Both are commonly inquired into in determining fitness for both high and low positions in private industry and are not less relevant in public employment.' "

Applying the principles of the decisions above cited to the facts in the instant case, we conclude that the oath prescribed by the resolution of the board of supervisors of Wayne county was not invalid for the reasons urged against it. We further conclude that said board had jurisdiction to take legislative action in the public interest with reference to the qualifications, including loyalty and reliability for a public trust, of employees in the service of the county, or those seeking such employment. We

find no merit in the claim that the board of supervisors was without jurisdiction to adopt the resolution in question.

On behalf of defendants it is insisted that plaintiff was guilty of unreasonable delay in the presentment of her claim to the defendant board of auditors. and that, because of such delay, she must be presumed to have acquiesced in her discharge and to have abandoned her claim. As before noted, the civil service commission of Wayne county rejected her petition for reinstatement on September 3, 1953, and her petition to the board of auditors for reinstatement and the payment to her of accrued salary, with additional payments, was not filed until on or about January 3, 1957.

Attention is directed to the decision of this Court in *Jones* v. *Doonan,* 265 Mich 384. There the plaintiff was suspended from his position as a policeman in the city of Dearborn by order of the chief of police, based on the fact that plaintiff had been arrested. Such dismissal occurred on August 26, 1929. Subsequently plaintiff notified the commission of safety of the city that the case against him had been dismissed and asked for reinstatement as a patrolman. The request was not granted and no action was taken on application made by plaintiff on May 20, 1932, through counsel, that he be given an opportunity to present his case to the commission. On May 24, 1932, plaintiff filed in circuit court a petition for a writ of mandamus to compel his reinstatement to active duty. This petition was dismissed, apparently with an understanding that petitioner would be granted a hearing before the commission of safety. For reasons not material here, the contemplated hearing did not result in definite action, and on October 25, 1932, plaintiff filed a petition in the circuit court of Wayne county seeking a writ of mandamus to compel his reinstate-

ment and the payment of back salary. The writ was denied, and an appeal taken to this Court. The opinion filed on the appeal pointed out that plaintiff could not have been lawfully dismissed without formal written charges. In discussing the claim urged on behalf of defendants that plaintiff had acquiesced in his discharge and had abandoned his office, it was said (pp 387–389):

"However, the charter provision was adopted in the interest of public service. The benefit to individuals is incidental thereto, not the primary purpose of the provision. It is not to the public good that officers or employees shall accept illegal discharge, or rest quiescent under it, and later mulct the public purse for money not earned. Unreasonable delay in asserting claim to the office results in abandonment of it and waiver of the right of trial. Public business requires that the assertion of claim to office be by formal demand and appropriate legal proceedings. It is not sufficient to merely make the claim and leave it open to inaction or controversy. * * *

"Plaintiff's declaration that he would never appear before the trial board and his subsequent failure to formally assert his right to the office or employment, within a reasonable time, was a waiver of the right of trial and an acquiescence in his dismissal. When to that is added the fact that he took no judicial proceedings for reinstatement for a period of nearly 3 years it must be held that he had abandoned his office and is not now entitled to reinstatement nor salary."

A like conclusion was reached in *Wayne County Prosecuting Attorney, ex rel. Taxpayers,* v. *City of Highland Park,* 308 Mich 425, 437, it being declared that *Jones* v. *Doonan, supra,* was directly applicable. Pertinent decisions of the United States supreme court are in accord with the Michigan holding as indicated in the above cited cases. In *United States,*

*ex rel. Arant,* v. *Lane,* 249 US 367 (39 S Ct 293, 63 L ed 650), the plaintiff sought by writ of mandamus to compel the secretary of the interior to vacate an order of dismissal and to reinstate him in his former office. Plaintiff had been removed from office as of June 30, 1913, and on July 20th following was forcibly ejected from the government office building. His petition for writ of mandamus was not filed until April 30, 1915. The supreme court of the District of Columbia denied the petition on the ground of laches. The court of appeals affirmed, and the supreme court of the United States concurred in the disposition of the matter. In reaching such decision it was said (p 372):

"When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the government service may be disturbed as little as possible and that 2 salaries shall not be paid for a single service.

"Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to effectively assert his claim for reinstatement to office for almost 2 years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy."

See, also, *Nicholas* v. *United States,* 257 US 71 (42 S Ct 7, 66 L ed 133); *Norris* v. *United States,* 257 US 77 (42 S Ct 9, 66 L ed 136); 43 Am Jur, Public Officers, § 381, p 163.

In *Byrnes* v. *City of St. Paul,* 78 Minn 205 (80 NW 959, 79 Am St Rep 384), it appears that plaintiff was a policeman in the defendant city. The chief of police, in June, 1894, demanded that he resign and directed that he turn in his keys and badge to the sergeant in charge. Thereafter for a period of about 2 years plaintiff made application at intervals to the chief of detectives to be assigned to duty, which applications were not granted. In Feburary, 1898, plaintiff commenced action to recover his salary from June 7, 1894, to February 15, 1898. In denying relief the supreme court of Minnesota said (pp 208, 209):

"It was his especial duty to seek to be reinstated in his office by formal demand, and, if necessary, by appropriate legal proceedings, in view of the peculiar relation in which he stood to the defendant, of which he now seeks to avail himself. When he did nothing of this kind, when he did not even demand his salary from the city, to permit a claim of this nature to be accumulated against it would be unreasonable. An appointive municipal officer, as was plaintiff, unlawfully dismissed and prevented from rendering any service, who has made no complaint to the mayor or to the city council, has not attempted to secure a reinstatement, but who has apparently acquiesced in the dismissal, cannot recover of the municipality the compensation incident to the office during the period in which he has performed no service. *Hagan* v. *City of Brooklyn,* 126 NY 643 (27 NE 265); *Phillips* v. *City of Boston,* 150 Mass 491 (23 NE 202); *Bernard* v. *Mayor of Hoboken,* 27 NJL 412; Throop, Public Officers, § 407. The plaintiff voluntarily abandoned and relinquished his office, or, as it is sometimes expressed, he 'resigned by implication.' This disposes of the case."

The supreme court of Tennessee in *State, ex rel. Ball,* v. *City of Knoxville,* 177 Tenn 162 (147 SW2d 97, 145 ALR 762), reached a similar conclusion based

on a delay of 18 months following an alleged wrongful discharge. The Tennessee case is reported in American Law Reports, followed by an annotation, 145 ALR 767, in which it is said (p 768):

"It is well settled that however unjust and unwarranted the removal, suspension, or transfer of a public employee may be, his right to reinstatement may be lost by acquiescence in the removal, or by laches or unreasonable delay in demanding reinstatement or asserting his rights in legal proceedings, the principle underlying all the decisions being based on considerations of public policy, to the end that if such person is successful in his action the public service may be disturbed as little as possible, and that 2 salaries may not be paid for but 1 service."

The statement of the general rule quoted is followed by the citation of many cases from different States. The application of such rule obviously barred plaintiff's recovery in the proceeding instituted by her before the defendant board of auditors. For such reason, as well as for the other reasons above discussed, the judgment of the trial court is affirmed.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

SOURIS, J. (*concurring*). In this case appellant challenges the constitutional validity of an oath required of her as a condition of her continued employment as a Wayne county civil service employee. The oath required her to swear, or affirm, that she "was not a Communist." It is her claim that the requirement of taking the oath deprived her of rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

Appellant also challenges the validity of the oath on other than constitutional grounds. She claims that, assuming the constitutionality of section 24 of PA 1941, No 370,* the oath was invalid because in direct conflict with the express provisions of that section of the act. The statutory language relied upon by appellant follows:

"No person in the classified civil service or seeking admission thereto, shall be appointed, reduced or removed, or in any way favored or discriminated against because of his political, racial, or religious opinions or affiliations, except for membership in any organization which has advocated or does advocate disloyalty to the government of the United States or any subdivision thereof."

Important as these issues are, particularly the issue of the oath's constitutionality in view of its direct inquiry regarding one's beliefs as distinguished from one's associational memberships, I do not believe it is appropriate for this Court to seek in this appeal to resolve them.

This Court has concluded, and I agree, that because of plaintiff's delay of over 3 years in presenting her salary claim to the county board of auditors or in otherwise contesting the validity of her discharge, "she must be presumed to have acquiesced in her discharge and to have abandoned her claim." Proceeding beyond that holding, 3 members of the Court today assume to pass judgment on the weighty constitutional questions sought to be raised by appellant. It has been my understanding that constitutional questions are not decided by this Court unless essential to decision. *Goodenough* v. *Department of Revenue,* 328 Mich 56, 68; *Cole* v. *City of Battle Creek,* 298 Mich 98, 104, and cases cited therein.

---

* CL 1948, § 38.424 (Stat Ann 1961 Rev § 5.1191[24]).

Perhaps there are some circumstances which would justify our determination of such questions even in the absence of decisional necessity, but in my view this appeal presents no such circumstance.

Because I concur in the Court's finding that appellant, by her long delay, acquiesced in her discharge and abandoned her claim, I concur in affirmance.

KAVANAGH and OTIS M. SMITH, JJ., concurred with SOURIS, J.

BLACK, J. (*concurring*). This case, considering our continuant failure to screen appeals coming here, has wasted a good deal of our tightly budgeted time. It is but another "prime example of the kind of case which ought not to be here on appeal" (Chief Justice DETHMERS in *Grossbart* v. *Gilbert,* 364 Mich 96, 97) and our triplet opinions thereof will determine nothing of constitutional or other value except that no reversible error has been made to appear.

If statistical information furnished us in 1959 by the joint committee on Michigan procedural revision* remains average-constant or nearly so, this Court is definitely winning, the race to being the first court of last resort in the United States which carries or attempts carrying an annual burden of 400 or more calendar causes requiring preparation and publication of formal opinions with stated "reasons." The honor is no honor. Too, it is all so unnecessary (see comment in *American Eutectic Welding Alloys Sales Co.* v. *Grier,* 363 Mich 175, 178, 179). It connotes mass production as well as slow production of poorly inspected judicial work and tends more and more toward the meagerly concealed "swapping [of] what may be the erroneous decision of a trial

---

* Interim report—Judicial Administration at the Appellate Level—Michigan.—REPORTER.

judge for what may well be the equally erroneous decision of 1 appellate judge." For amplification from the pens of Chief Justices Vanderbilt and DETHMERS, see the *American Alloys Case, supra.*

We should affirm—summarily—for 2 reasons. The first is that the 1953 determination of the county civil service commission, upholding Mrs. Crowe's discharge for stated cause, became *res judicata* of the validity and propriety of such discharge.* The second is that the constitutional question Mrs. Crowe would have us consider, by means of her present action for back pay instituted before the defendant board of county auditors January 3, 1957, arrives "not so shaped by the record and by the proceedings below" as to bring it "before this Court as leanly and as sharply as judicial judgment" imperatively requires. (Quotation from Mr. Justice Frankfurter's concurring opinion of *United States* v. *Congress of Industrial Organizations,* 335 US 106, 126 [68 S Ct 1349, 92 L ed 1849]; adopted in *Hodge* v. *Pontiac Township Board,* 363 Mich 544, 545, 546.)† Such constitutional question is stated by Mrs. Crowe's counsel as follows:

---

* See full discussion and citation of authority to the point that "decisions of administrative boards have a finality and are not open to collateral attack," and "are thenceforth *res judicata*", in *Lumberman's Mutual Casualty Co.* v. *Bissell,* 220 Mich 352, 354, 355, 363 (28 ALR 874); followed in *Besonen* v. *Campbell,* 243 Mich 209, 212; *Wisconsin Michigan Power Co.* v. *General Casualty & Surety Co.,* 252 Mich 331, 335 (76 ALR 1); *Fidelity & Casualty Co. of New York Co.* v. *Schoolcraft County Road Commissioners,* 267 Mich 193, 197; *Michigan Boiler & Sheet Iron Works* v. *Dressler,* 286 Mich 502, 510; and see general treatment of administrative determinations as being *res judicata* in 42 Am Jur, Public Administrative Law, § 161, pp 519–523.

† See opinion of Mr. Justice TALBOT SMITH in *People* v. *Dungey,* 356 Mich 686, 696, quoting *Aircraft & Diesel Equipment Corp.* v. *Hirsch,* 331 US 752, 763 (67 S Ct 1493, 91 L ed 1796); also *Smith* v. *Curran,* 267 Mich 413, 418 (94 ALR 766), the opinion of which concludes:

"Aside from the fact that the present controversy is disposed of on the question of signatures and the rule that constitutionality of an act will not be passed upon where a case may be otherwise decided, the effect of a ruling on validity has such far-reaching possibilities that we think it should not be made except upon full presentation of facts and law."

"Did the form of oath required by the Wayne county board of supervisors violate the 'due process clause' guaranteed by the First and Fourteenth Amendments to the Constitution of the United States, in that:

"(a) It did not contain the elements of knowledge and intent.

"(b) It was vague and indefinite; failed to provide proper standards; and abridged freedom of speech, thought, and associations.

"(c) The resolution enabling the oath fails to provide lawful and proper standards and is invalid as vague and uncertain."

*First:* A discharged county employee, having unsuccessfully sought reinstatement by the county civil service commission in accordance with section 16 of PA 1941, No 370 (CL 1948, § 38.416 [Stat Ann 1961 Rev § 5.1191(16)]), has his remedy of review of the commission's determination by certiorari, which remedy is exclusive (*In re Fredericks,* 285 Mich 262 (125 ALR 259); *Bischoff* v. *County of Wayne,* 320 Mich 376; *In re Mosby,* 360 Mich 186; *Lesniak* v. *Fair Employment Practices Comm.,* 364 Mich 495). He may not, then or years later, obtain review of such determination by filing a claim for back salary with the board of county auditors and by appealing to the circuit court under present sections 2, 3, and 4 of PA 1909, No 94 (CL 1948, §§ 46.72–46.74 [Stat Ann 1961 Rev §§ 5.522–5.524]). Section 4 provides that such an appeal, once it is docketed in circuit, becomes "an action in which the claimant shall be plaintiff and the particular county defendant"; that the "statement or return of the proceedings" shall "be equivalent to a declaration in such action," to which "the defendant may file its plea thereto within 20 days after such appeal is taken", and that the action "shall be heard, tried and determined as an original cause, and the practice in the

circuit court shall be followed in all such matters, except where the contrary is herein expressed."

Such is an action at law, as this Court said unequivocally in *Kaminski* v. *Wayne Board of Auditors,* 287 Mich 62,* and an appeal from judgment entered upon authority of section 6 of the same act (CL 1948, § 46.76 [Stat Ann 1961 Rev § 5.526]) cannot enter our law portals with those twin ladies of equity—laches and acquiescence—on each arm thereof. "Laches, within the term of the statute of limitations is no defense at law [citing cases]." Cardozo, J., writing for the court in *United States* v. *Mack,* 295 US 480, 489 (55 S Ct 813, 79 L ed 1559). Thus, if Mrs. Crowe had a righteous cause for reimbursement of back salary when in 1957 her claim was filed with the county board of auditors, and if such cause was not then barred by statutory limitation, it would be good now whether or no the result offend the foregoing defensive principles of equity.

So much for the nature of the present lawsuit. It cannot serve as a vehicle for review of that which was determined and adjudicated by the county civil service commission in 1953.

*Second:* The "dubious" nature of presentation of the quoted constitutional question becomes apparent upon comparison of the administrative record made in 1953, before the county civil service commission, with the trial record made in 1961 before Judge Borchard in circuit. Mrs. Crowe sought to review her discharge by the county treasurer during the days of 1952–1956 when "McCarthyism" separated many citizens—even once-friendly neighbors—into

---

* "This is a proceeding at law, and notwithstanding appellants' contention to the contrary, we are of the opinion that plaintiff's right to recover is not impaired by laches. Plaintiff's delay of approximately 3 years in pressing his claim is decidedly short of the period of the statute of limitations by which it would be barred." (*Kaminski,* p 67.)

grimly suspicious cults. What she actually sought was consideration by the commission of her claim that the oath she would not take was begotten of such "ism" and that the county treasurer had employed it politically to get her political job as Wayne county's no-quarter war between Republicans and Democrats continued its bitter and never-ending way. Her letter to the commission, by which she claimed and received statutory appeal and hearing from such discharge, presented fully her testified "idea" of review and the real fact-basis on which she would have us decide that the commission violated her above stated Federal rights. The letter follows, complete:

"Wayne County Civil Service Commission
2200 Cadillac Tower
Detroit 26, Michigan

*Gentlemen:*

"This letter is in the form of an appeal to the civil service commission appeals board for a hearing on my being fired today from my job with the county treasurer's office, for refusal to sign the 'Loyalty Oath.'

"The oath signed formerly about 'force and violence' apparently is not strong enough to strip civil service protection from people who have been active in the union, pro-labor, strongly liberal, who agree with many things the Communist party agrees with, who have been 'New-Deal Democrats' and outspoken for peace and civil rights, and against thought-control.

"By the yardstick of Senator McCarthy and his type, a 'subversive.'

" 'I am not a Communist' can mean anyone and everyone, even you gentlemen, if the present hysteria increases and fear and intimidation become more rampant, which will happen unless the fear present now is effaced and a courageous stand on principle is made.

"The anti-democratic forces in our country, as far as their Michigan activity is concerned, are out to McCarthyize Wayne county, the labor and Democratic party stronghold in the State of Michigan, as a prelude to the 1954 senatorial and 1956 presidential elections. Honest Republicans are ashamed, but the reactionary elements know that the way for them to concretize a victory here is through the jobs they can make for their adherents. Twenty years of a Democratic Wayne county is quite a hurdle for them with civil service job protection. A stretchable loyalty oath is just the thing. But a study of history shows oaths and other forms of intimidation peculiar to their historical era were defeated and progress came about despite them. A sense of decency, inherent in the American people, will lick this period of assininity and it will pass.

"Please inform me when and where I may have a hearing."

To undertake present decision of the stated constitutional question would require a theorist's choice between consideration thereof on the basis of the 1953 record made before the county civil service commission or the 1961 record made in circuit before Judge Borchard. We cannot do this. Neither can we incestuously marry such records to determine whether this plaintiff, on strength of the stated constitutional issue, should have a monetary judgment against Wayne county. Our procedural rules are not as yet of such loose and easy virtue.

I vote to affirm.

ADAMS, J., took no part in the decision of this case.