BISCHOFF *v.* COUNTY OF WAYNE.

1. COUNTIES—CIVIL SERVICE COMMISSION—REVIEW OF FINDINGS.
   Since there should be finality to the findings of a county civil serv-
   ice commission, review thereof by courts should be limited to
   certiorari ('Act No. 370, Pub. Acts 1941).

2. SAME—CIVIL SERVICE COMMISSION—DISCRETION.
   A county civil service commission has broad discretionary powers,
   but it cannot act arbitrarily.

3. MANDAMUS—CIVIL SERVICE COMMISSION—CLASSIFICATION—DIS-
   CRETION.
   While mandamus is the proper remedy to compel a municipal
   civil service commission to correct an illegal classification of
   positions in the public service, it will not lie when the deter-
   mination of the commission does not constitute an abuse of
   discretion and cannot be said to be illegal.

4. SAME—COURTS—FAILURE TO EXERCISE DISCRETION BY SUBORDI-
   NATE BODIES.
   Courts will not mandamus subordinate bodies, acting within the
   limits vested in them by law, unless the action is so capricious
   and arbitrary as to evidence a total failure to exercise dis-
   cretion.

5. OFFICERS—ADMINISTRATIVE BOARDS—DETERMINATION OF FACTS.
   The determination of facts and the propriety of action of ad-
   ministrative boards is not a judicial function.

6. CONSTITUTIONAL LAW—DIVISION OF POWERS.
   Judicial usurpation of the functions of an administrative body
   is forbidden by the Constitution (Const. 1908, art. 4).

7. CERTIORARI—QUESTIONS REVIEWABLE—ADMINISTRATIVE POLICIES.
   On appeal in nature of certiorari the reviewing court does not
   determine administrative policies nor purely administrative
   questions.

8. COUNTIES—CIVIL SERVICE COMMISSION—CHIEF DEPUTY CIRCUIT
COURT CLERK.

On certiorari to review order granting writ of mandamus to
compel county civil service commission to classify plaintiff,
the chief deputy circuit court clerk, as a court executive in-
stead of a clerk, record failed to disclose any testimony in
justification of circuit court's finding that the commission had
acted capriciously or arbitrarily or had made other than an
honest attempt to perform statutory duty in reallocating plain-
tiff's position from court executive to clerk (Act No. 370,
§§ 12, 18, Pub. Acts 1941).

9. SAME—CIVIL SERVICE COMMISSION—COURT EXECUTIVES—ARBI-
TRARY CLASSIFICATION—EVIDENCE.

Contention of chief deputy circuit court clerk of county that
because no one serving in connection with the circuit court had
been classified by the county civil service commission as a
court executive while persons serving in the probate court, the
offices of circuit court commissioners and friend of the court
had been so classified was indicative of arbitrary and capricious
conduct on the part of the commission in failing to make a
proper and uniform classification *held*, without justification,
where there were two persons in the county clerk's office, who
although in the unclassified service, were superior officers of
plaintiff and acted as court executives, and persons so clas-
sified in other courts had no superior in their own department
intervening between them and the judge or official of com-
parable rank under whom they serve (Act No. 370, §§ 12, 18,
Pub. Acts 1941).

10. SAME—CIVIL SERVICE COMMISSION—SALARIES—PART-TIME EM-
PLOYEE OF COUNTY ROAD COMMISSION.

Where a county had elected to adopt county-wide civil service,
the civil service commission is not bound by recommendation
of the county road commission as to the salary of latter's
part-time employee since it is the duty of the civil service com-
mission to determine what, under all the circumstances, would
be proper compensation for services rendered by such employee
who also worked for county in another capacity (Act No. 370,
Pub. Acts 1941).

11. SAME—CIVIL SERVICE COMMISSION—CIRCUIT JUDGE—JURISDIC-
TION.

Circuit judge acted without jurisdiction where he sought by hear-
ing *de novo* to substitute his judgement for that of a county

civil service commission in the discharge of its function of fixing classified county employee's classification and his compensation (Act No. 370, Pub. Acts 1941).

12. Certiorari—Mandamus—Jurisdiction.

Where plaintiff sought to compel county civil service commission to reclassify his position from that of clerk to court executive by mandamus in circuit court and no challenge to such remedy was made in the circuit court, the review of order granting writ of mandamus by certiorari is not to be inferred as recognition of mandamus as a proper remedy, and, since the question of remedy is jurisdictional, it may be raised for the first time in the Supreme Court, and writ of mandamus quashed.

13. Costs—Request as to Allowance.

No costs are allowed upon reversal on appeal in nature of certiorari by county civil service commission to review order granting writ of mandamus to chief deputy circuit court clerk to compel appellant to reclassify plaintiff as court executive rather than clerk, where request that no costs be allowed is made in appellants' brief.

Appeal from Wayne; Murphy (George B.), J. Submitted January 6, 1948. (Calendar No. 43,901.) Decided April 5, 1948.

Mandamus by Carl W. Bischoff against County of Wayne and others to compel classification as court executive II. Judgment for plaintiff. Defendants review by appeal in nature of certiorari. Reversed.

*Walter M. Nelson,* for plaintiff.

*James N. McNally,* Prosecuting Attorney, and *J. Lynn Fewlass, Julius C. Pliskow* and *Philip A. McHugh,* Assistant Prosecuting Attorneys, for defendants.

*William E. Dowling,* Corporation Counsel, and *John G. Dunn* and *Helen W. Miller,* Assistants Corporation Counsel, for City of Detroit, *amicus curiae.*

NORTH, J.  This is an appeal by the defendants in a mandamus proceeding heard in the Wayne county circuit court.  Plaintiff is the chief deputy circuit court clerk in Wayne county.  In administering its official duties the civil service commission of Wayne county, herein referred to as defendant or the commission, classified plaintiff, who occupied two official positions, as clerk IV and as executive secretary I of the Wayne county road commission.  Plaintiff testified, ''My beginning salary in that position as chief court clerk was $3,600.  At the time I started my appeal it was $3,600.  I am being paid now a salary of $4,710.  I get the maximum now.''  Presumably the above figures pertain only to plaintiff's position as chief deputy circuit court clerk, but do not include an additional annual salary as fixed by the civil service commission of $1,000 for plaintiff's services as clerk of the road commission.

Plaintiff asserts that by reason of the character of the official duties performed by him he was and is entitled to be classified as court executive II in which classification the maximum annual salary was $7,590, but in May, 1947, was increased to $8,050; and that his annual salary as clerk of the road commission should have been fixed at $1,200.  Briefly stated the grounds upon which plaintiff asserts he is entitled to relief in this mandamus proceeding are: (1) That his ''erroneous classification by said civil service commission  *  *  *  (was) wilfully and deliberately made,'' and that in its classification of plaintiff the commission's action was and ''is arbitrary, unauthorized, erroneous, and contrary to the rights of plaintiff;'' and (2) in fixing plaintiff's annual salary as secretary of the road commission at $1,000 instead of $1,200, the action of the civil service commission was ''arbitrary and discrimina-

tory." After an extended hearing in the circuit
court, mandamus issued which gave plaintiff the re-
lief sought, effective retroactively to August 1, 1943,
as to classification and as to salary which plaintiff
claims he should have received. Defendants have
appealed.

Civil service in Wayne county became effective
November 20, 1942, under Act No. 370, Pub. Acts
1941 (Comp. Laws Supp. 1945, § 1464-11 *et seq.*,
Stat. Ann. 1947 Cum. Supp. § 5.1191 [1] *et seq.*),
from which we quote the following:

"SEC. 12. General powers and duties. The pow-
ers and duties of the (civil service) commission shall
be as follows:    *    *    *

"(b) Shall from time to time make, in accord-
ance with the provisions hereof, rules adapted to
carry out the purposes of this act and not inconsist-
ent with its provisions for the examination and
selection of persons to fill the offices and positions
in the classified service, which are·required to be
filled by appointment, and for the selection of per-
sons to be employed in the service of the county;
*    *    *

"(f) The classification shall be subdivided into
groups and shall be based upon, and graded accord-
ing to the duties and responsibilities of such posi-
tions, and shall be so arranged as to permit the
filling of the higher grades through promotion. All
salaries shall be uniform for like service in each
grade of the classified service as the same shall be
classified and standardized by the commission. Such
classification and standardization of salaries shall
not be final until approved by the board of supervi-
sors, and such salaries shall not be paid except in
accordance with such classification and standardiza-
tion;

"(g) Shall have such other powers and perform
such other duties as may be necessary to carry out
the provisions hereof.    *    *    *

"SEC. 18. All payrolls shall be approved by the civil service commission, or by its secretary when so authorized by the commission, before payment."

In conformity with its statutory duty the civil service commission formulated specifications for the various positions in the classified service. There were approximately 400' grades or classifications. Because of plaintiff's contention that he is entitled to be placed in the classification of court executive II, we have copied in footnote A appended hereto

---

A

"*Class title:*                                              *Court executive*

"*Nature of work in this class:*

"Employees in this class perform highly responsible administrative work in supervising the clerical and technical activities of a major court. General supervision is received from a judge or official of comparable rank and operations are ordinarily circumscribed by statutory provisions, but, within these limitations, these employees have complete responsibility for all court, operations not requiring judicial determinations.

"Court executives ordinarily direct a variety of activities relating to court operations and handle, subject to approval of policies and major decisions, the management phases of the organization's work. In this capacity, they participate in the employment, training, assignment and discipline of personnel, prepare budget and purchase requests, and prepare and review departmental procedures, reports, and plans of organization.

"An important phase of the work of court executives is the wide variety of official and public contacts in which they participate. In this connection, these employees prepare important and varied correspondence and confer with governmental officials, attorneys and others. They may also be required to prepare reports and summaries of court activities and accounts of the receipt and disposition of funds paid into the court.

"*Essential knowledge, abilities and skills:*

"Thorough knowledge of the statutory powers and limitations of the court concerned.

"Thorough knowledge of the purpose, functions and scope of the court concerned.

"Thorough knowledge of modern office practices and equipment.

"Considerable knowledge of management practices such as those relating to personnel management, budgeting, and purchasing.

"Ability to plan and integrate the activities of a number of specialized units performing clerical and technical work in connection with the operation of a major court.

"Ability to develop effective and economical court procedures and to suggest reorganization of functions in the interests of economy and efficiency.

the requisites of that classification as set forth in
the commission's specifications.  And in footnote B

---

"Ability to establish and maintain satisfactory relationships with
judicial and other governmental officials, subordinates, attorneys, and
the public.

"Ability to prepare reports and to handle a variety of correspond-
ence.

"*Desirable experience and training:*

"Considerable supervisory experience in an important phase of the
activity of the court concerned, and completion of the twelfth school
grade; or considerable successful practice as an attorney, and gradua-
tion from an accredited law school."

B
"*Class title: Executive* (changed to clerk IV)

"*Nature of work in this class:*

"Employees in this class perform supervisory and technical work
in the direction of a large specialized clerical unit or as assistants
to the chief administrator of a large county department.  The super-
vision received by executives is of a general nature and decisions are
ordinarily unreviewed except in unusual situations or upon complaints.

"Executives are responsible for making major decisions concern-
ing procedures to be followed in the unit, for offering advice and
counsel to subordinate employees, and for handling a variety of
management problems for an administrative superior.  These em-
ployees participate in such departmental operations as employing,
training, and assigning employees, preparing budget and purchase
requests, and preparing or compiling work procedures.

"Some assignments in the class of executive require considerable
specialized knowledge of departmental operations such as those re-
lating to tax procedures, court procedures, preparation and review
of legal documents, or insurance activities but, in general, the most
significant factors in these positions are those relating to depart-
mental administration.  All of the positions in this class require
considerable understanding of the functions and scope of the par-
ticular department's activities so that work may be scheduled and
organized effectively.  In connection with their duties, employees in
this class may be called upon to handle a variety of subjects, and to
prepare and review reports and memoranda.

"*Essential knowledge, abilities and skills:*

"Thorough knowledge of the functions and scope of the organiza-
tion in which the position is found.

"Thorough knowledge of modern office practices and equipment.

"Considerable knowledge of management activities such as those
relating to personnel management, budgeting, and purchasing.

"Ability to plan, organize, and coordinate the activites of a large
group of employees performing specialized clerical operations.

"Ability to develop effective procedures for clerical operations
and to train new employees in such procedures.

"Ability to establish and maintain satisfactory relationships with
administrative officials, subordinate employees and with the public.

are the commission's specifications for clerk IV, wherein plaintiff was classified by the commission.

Plaintiff's claim to relief appears to be based primarily upon his contention that the record before the commission, incident to plaintiff's petition for reclassification, established that his qualifications and the duties performed by him were such that he clearly came within the classification of court executive II, rather than that of clerk IV. In this connection he points out and complains of the fact that the commission in determining its classifications did not place any of the deputy clerks of the circuit court of Wayne county in a class of court executive, notwithstanding such classification was given to certain clerks employed in inferior courts, such as the court of common pleas for the city of Detroit, the circuit court commissioner's court of Wayne county, the probate court of Wayne county, the juvenile division of that court, and clerks for the friend of the court for Wayne county. It is in the above particulars plaintiff asserts that the commission in the discharge of its official duties acted arbitrarily, capriciously and in an unauthorized manner.

Plaintiff had been employed in Wayne county service since March, 1935, and since December, 1937, in connection with the office of the county clerk. From time to time he was advanced in his position with an increase of salary. Because of his previous employment he automatically qualified under civil service without the requisite of an examination. It appears from the record that in originally putting civil service into effect in Wayne county, classification of the employees, numbering approximately

---

*"Desirable experience and training:*

"Considerable supervisory experience in clerical work, some experience in the particular department in which the position is found, and completion of the twelfth school grade, preferably supplemented by some college training in business administration or law.''

5,000, was made by the commission, in part at least, on the basis of questionnaires filled out and submitted to the commission by the employees. In April, 1943, plaintiff submitted to the commission his questionnaire which disclosed that at that time he was employed as "chief court clerk" in the county clerk's office, with a salary of $3,720. In June, 1943, plaintiff also submitted a classification questionnaire which contained a detailed description of the duties performed by him. Plaintiff was given the classification of an executive, but that designation was changed December 1, 1943, to clerk IV. In April, 1944, the commission notified plaintiff that it had determined to reallocate his position in the clerk's office from that of executive to the class of clerk IV, effective as of December 1, 1943. This was neither a promotion nor a demotion. Rather it was only a change in the name or designation of the same classification.

Plaintiff was dissatisfied with his classification as clerk IV and sought reclassification by the commission as "court executive #2." Apparently many conferences were had between plaintiff and representatives of the commission; also between county clerk Lingeman, who appointed plaintiff, and the commission. A so-called "desk audit" was made by the commission in December, 1944, of the duties performed by plaintiff. This "desk audit" and another made in June, 1945, cover more than 35 pages of the record now before this Court. In February, 1945, plaintiff was given a hearing by the commission. The record discloses that a prolonged and most thorough investigation and consideration of plaintiff's petition for reclassification was made, but plaintiff's petition that he be reclassified from clerk IV to court executive II was refused by the com-

mission. The mandamus proceedings now before us for review followed.

This appeal is in the nature of certiorari. Primarily decision herein hinges on whether the circuit judge, in granting mandamus on the record made before him, exceeded his jurisdictional powers. *In re Fredericks*, 285 Mich. 262 (125 A. L. R. 259); *Public Welfare Commission of Detroit* v. *Civil Service Commission of Detroit*, 289 Mich. 101. The authorities about to be noted disclose sound principles of law which must be observed in this type of cases.

"If the civil service system as set up by the people of Detroit is to be effective, there should be finality to the findings made by the commission and review by courts should be limited to the narrow confines of the office of the writ of certiorari." *Public Welfare Commission of Detroit* v. *Civil Service Commission of Detroit, supra.*

"The civil service commission has broad discretionary powers, but it cannot act arbitrarily." *People, ex rel. Sweeney,* v. *Rice,* 279 N. Y. 70 (17 N. E. [2d] 772).

"While mandamus is the proper remedy to compel a municipal civil service commission to correct an illegal classification of positions in the public service, it will not lie when the determination of the commission does not constitute an abuse of discretion and it cannot be said, therefore, to be illegal." *Matter of Dill* (syllabus), 185 N. Y. 106 (77 N. E. 789).

"The courts will not by mandamus attempt to control the discretion of subordinate bodies acting within the limits vested in them by law, unless the action is so capricious and arbitrary as to evidence a total failure to exercise discretion." *State, ex rel.*

*Farmer,* v. *Austin* (syllabus), 186 Wash. 577 (59 Pac. [2d] 379).

"Mandamus will not lie in matters involving discretion on the part of a public agency unless its action is so arbitrary and capricious as to evidence a total failure to exercise discretion; and civil service commissions come within the rule and have a discretionary power in the matter of classification." *State, ex rel. Reilly,* v. *Civil Service Commission of Spokane* (syllabus), 8 Wash. (2d) 498 (112 Pac. [2d] 987, 134 A. L. R. 1100).

"The determination of facts and the propriety of action of administrative boards is not a judicial function." *Mann* v. *Tracy,* 185 Cal. 272 (196 Pac. 484).

In *Goodfellow* v. *Civil Service Commission,* 312 Mich. 226, 232, Justice REID, speaking for the Court, said:

"We must not usurp the functions of an administrative body. This the Constitution of the State forbids. Constitution (1908), art. 4.

"The trial court in the instant case was correct in holding that the review of the action of the civil service commission of the city of Detroit is by appeal in the nature of certiorari, in which appeal we do not determine administrative policies, nor purely administrative questions. The bill of complaint in the instant case petitioned the court to determine administrative matters, which bill of complaint was properly dismissed."

A thorough examination of the record on this appeal fails to disclose any testimony in justification of a finding that the defendant commission in classifying plaintiff as clerk IV acted capriciously or arbitrarily, or that the commission's act in so classifying plaintiff was other than an honest attempt

to perform its statutory duty in that respect. In so holding we have in mind plaintiff's testimony as to the character and details of his duties and responsibilities, and that he believed they were such that his position should be classified as court executive II. Also, we are mindful of the testimony of county clerk Lingeman, who, in testifying concerning plaintiff herein, said:

"I hold him responsible to me for the ordinary carrying out of the mechanical functions of the 18 circuit courts, and visiting judges.   *   *   *
"Here I am, the clerk of the highest court in the county, where every decision of the lower courts can be appealed to the court of which I am clerk, and some of these lower courts have from one to four executives I and II, and in my entire set-up there isn't a single court executive I or court executive II. *   *   *   I have positively stated orally or in writing, to the civil service commission, and its members that I believe, and it was my opinion and judgment, that Bischoff's position as classified clerk IV, was entitled to a higher classification."

There is no claim of personal animosity in this matter. At the hearing in the circuit court the following occurred:

"*The Court:* Is there any personal animosity in the set-up anywhere?
"*Mr. Nelson:* I must answer that, as counsel (for plaintiff), I have not experienced one item of personal animosity; we just want the present classification changed from clerk IV to court executive II. I think that is the substance of it—a little assistance in getting around to justice for the circuit court clerk."

County clerk Lingeman, testifying in behalf of plaintiff, said:

"I know there have been innumerable hearings and on Mr. Bischoff's matter. I know that I have appeared myself and I will say this: I have never been denied the right to appear before the commission, nor has there ever been a time that they have not given me a respectful hearing when they were all there. There is no question involved that there has been a tendency to close the door to presentation of any facts we had."

The civil service commission is composed of three members, each of whom testified in the circuit court as also did others who were members of the commission's staff. The uncontroverted record is to the effect that plaintiff's petition for reclassification was given painstaking consideration; and the only fair conclusion from the record is that a difference of opinion exists between plaintiff and the commission as to plaintiff's proper classification. It is not possible from this record to conclude that in classifying plaintiff as clerk IV the commission acted capriciously, arbitrarily, or in bad faith.

A phase of the record much stressed by plaintiff in support of his contention may be outlined as follows: In the commission's classification of employees no one serving in connection with the Wayne county circuit court is classified as court executive I or court executive II, the latter being the higher of the two classifications. But there is one or more such classified employees in connection with the work of the probate court, the common pleas court, the Wayne county circuit court commissioners, and the friend of the court. Obviously each of the above is inferior to the circuit court of Wayne county; and from this plaintiff urges that the commission's failure to classify any of the clerks who serve in connection with the Wayne county circuit court as court executive, discloses arbitrary and capricious conduct

on the part of the commission in failing to make a proper and uniform classification.

The facts disclosed by the record do not justify plaintiff's contention or conclusion. Without referring in detail to the commission's specifications relative to the classifications of clerk IV and court executive II, the following may be noted. In part the specifications pertaining to "executive," later changed to clerk IV, are:

"Nature of work in this class: Employees in this class perform supervisory and technical work in the direction of a large specialized clerical unit or as assistants to the chief administrator of a large county department. The supervision received by executives is of a general nature and decisions are ordinarily unreviewed except in unusual situations or upon complaints."

Clearly plaintiff's position as a deputy county clerk fits into the above specifications. He is not at the head of the county clerks of Wayne county. He is a subordinate. In plaintiff's classification questionnaire, signed by him and filed with the commission, the following appears:

"Who tells you what work to do and how to do it? (Give name and title)—Edmund B. Sullivan, chief deputy clerk; Caspar J. Lingeman, Wayne county clerk."

The following is from plaintiff's testimony:

"In my position, it is a fact that I report to Lingeman, the county clerk, and that upon him devolves the executive and administrative responsibility relating to my position. He is my boss, if that's what you mean.   *   *   *   It is a further fact, in the county clerk's office, that there is another employee higher than my own position, as division head, to whom I report, the chief deputy clerk, Edmund B.

Sullivan. He is not under civil service, not classified at all, because he is the chief deputy in the office of county clerk, Lingeman.''

County clerk Lingeman, referring to plaintiff, testified, as previously noted:

''I hold him responsible to me for the ordinary carrying out of the mechanical functions of the 18 circuit courts, and visiting judges.''

From the foregoing it quite conclusively appears that plaintiff's responsibilities are not immediately to the judges of the Wayne county circuit court. Instead he has two superiors in the county clerk's department; and further, plaintiff does not receive supervision ''from a judge or official of comparable rank.'' This leads to noting in part the specifications for the class of employees designated as ''court executive.'' We quote from that specification:

''Class Title: Court executive
''Nature of work in this class: Employees in this class perform *highly* responsible administrative work in supervising the clerical and technical activities of a major court. *General supervision is received from a judge or official of comparable rank* and operations are ordinarily circumscribed by statutory provisions, but, within these limitations, these employees have complete responsibility for all court operations not requiring judicial determinations.''

It scarcely needs to be noted that if county clerk Lingeman and his chief deputy clerk Sullivan were subject to civil service classification, the former, and possibly the latter, would fall within the specifications just above quoted; but by statutory provisions (Act No. 370, § 10, Pub. Acts 1941 [Comp. Laws Supp. 1945, § 1464-20, Stat. Ann. 1947 Cum. Supp. § 5.1191(10)]) neither of these two is subject to civil service. Nonetheless as to the Wayne county circuit

court they serve as court executives.  As to his contact with the judges of the Wayne county circuit court, county clerk Lingeman testified:

"I make my own personal contacts more directly with the executive judge, Judge Jayne.  *  *  * If there is some matter that comes up that I feel should be brought to the attention of all the judges, I then first contact Judge Jayne, as executive judge, and present it to him, and he, in turn, conveys the wishes or will of the other judges to me, and we have always had this very pleasant and satisfactory arrangement."

In contrast with plaintiff's position the following appears as to the employees who are classified as court executives in the other courts or court departments hereinbefore noted.  Court executives II have no superior in their own department intervening between them and the "judge or official of comparable rank" under whom they serve.  Apparently in the exercise of its judgment the civil service commission concluded that since the comparable positions in the circuit court were occupied by county clerk Lingeman and his chief deputy Sullivan, notwithstanding they were not under civil service, the classification of court executive I or court executive II should not be made applicable to any of the employees in the county clerk's department.  Further, from its investigations incident to making classifications the commission found that the nature and character of the work performed by those who were classified as court executives, incident to the work of the noted inferior courts and court departments, differed very widely from the work and responsibilities of plaintiff in his subordinate position in the county clerk's department.  The commission's classification of plaintiff as clerk IV was in no sense based upon the assumption that the circuit court was not "a major

court." In view of the disclosed circumstances there is no justification for finding that the civil service commission acted either arbitrarily or capriciously or in bad faith in not classifying plaintiff as a court executive.

There is no merit to plaintiff's further complaint that his annual salary as secretary of the Wayne county road commission was fixed by the civil service commission at $1,000 instead of $1,200, thus making his total annual salary $5,710. It is true that the road commission adopted a resolution agreeing to pay plaintiff as its secretary an annual salary of $1,200 and recommended such to the civil service commission. The civil service commission was not bound by the road commission's recommendation. Instead, it was the duty of the civil service commission to determine what, under all the circumstances, would be proper compensation for plaintiff's services rendered in this secondary capacity as a part-time employee. The civil service rules contain the following:

"Sec. 6. An employee who shall simultaneously hold two or more positions described in section 2 of these regulations shall receive as full compensation only such portion of the salaries of the respective positions prescribed in the salary schedule as the civil service commission shall determine, notwithstanding anything else contained to the contrary."

Plaintiff seems, in part at least, to base his claim on the ground that incident to his services as secretary of the road commission he was required to work overtime. On this phase of the controversy civil service commissioner Von Moll testified:

"I recall that the salary our commission concluded should be given him (plaintiff) for the road commis-

sion work was $1,000. Salary of $1,000 was arrived at in this way: Mr. Bischoff stated he was under the necessity of working on Saturdays, because of his work during the time spent with the county road commission, and under the regulations of our pay plan, no employee could earn more than $1,000 in any one year for overtime beyond the 6 days' work.''

The action of the civil service commission in the particular under consideration was clearly within the scope of its authority. It was not arbitrary, malicious, capricious, or in bad faith. Nothing appears in this record which would justify a modification of its determination by the intervention of a court.

It would be of no service to review in further detail herein the two-volume record on this appeal, consisting of more than 700 pages. We have given it thorough consideration, but find nothing therein which would justify intervention in or modification of the determination of the Wayne county civil service commission in fixing plaintiff's classification or his compensation. In the instant case the circuit judge sought by hearing *de novo* to substitute his judgment for that of the civil service commission in the discharge of one of its administrative functions. In attempting to do so he acted without jurisdiction. The courts cannot supplant or function as civil service commissions.

From our review in the above matter it is not to be inferred that under the circumstances of the instant case mandamus was a proper remedy. The method of our review has been prompted by reason of the fact that defendants did not, in the circuit court, challenge plaintiff's right to seek relief by mandamus. That issue was not presented to the trial judge. But it is strenuously urged by defendants in this Court; and it may be urged here for the first time because it presents a matter of jurisdic-

tion. *Warner* v. *Noble,* 286 Mich. 654; *Township of Warren* v. *Raymond,* 291 Mich. 426. Whether under other circumstances, presenting a different type of issue, mandamus would be a proper remedy, need not be and is not decided herein. However, so that an erroneous inference may not arise from our present opinion, we note, and we trust with finality, that under the record in the instant case wherein the commission acted in the exercise of its vested powers, the sole remedy available to plaintiff was certiorari. A summary disposition of this appeal might have been made on that ground. See *In re Fredericks, supra; Goodfellow* v. *Civil Service Commission, supra.*

The writ of mandamus issued by the circuit court is quashed and the case dismissed. Because it is so requested in defendants' briefs, no costs are allowed.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETH-MERS, BUTZEL, and CARR, JJ., concurred.