NEUMAN *v.* FLINT CIVIL SERVICE COMMISSION

OPINION OF THE COURT

1. OFFICERS—CIVIL SERVICE COMMISSIONER—GRADING OF CANDIDATES.
   Courts will intervene to deal with a civil service commission's grading of candidates for civil service positions where the challenge is not so much to the determination of the commission as it is to the actions of one commissioner who preempted the authority of the entire civil service commission.

2. OFFICERS—CIVIL SERVICE COMMISSIONER—GRADING OF CANDIDATES—DISCRETION—NEW EXAMINATION.
   A new civil service examination was necessary because one of the civil service commissioners grossly exceeded his authority

REFERENCE FOR POINTS IN HEADNOTES
[1-3] 15 Am Jur 2d, Civil Service § 11.

where the examination given to determine an eligibility list for promotion, consisted of several differently-weighted parts, including oral interviews with three commissioners, a written examination, and a service rating, one of the commissioners gave the plaintiffs scores of zero, the zero grade, although comprising only 10% of the composite grade, made it mathematically impossible for the plaintiffs to remain on the eligibility list, and the commissioner's grade of zero did not reflect, as shown by the commissioner's testimony, a considered evaluation of the plaintiffs' abilities based on a 100% scale, but his personal opinion that the plaintiffs should not be promoted.

DISSENT BY DANHOF, P. J.        ·

3. OFFICERS—CIVIL SERVICE COMMISSIONER—GRADING OF CANDIDATES —DISCRETION.

    *Trial court acted without jurisdiction when it ruled that civil service commissioner's giving a grade of "zero" on the oral examination of a policeman seeking promotion was illegal, arbitrary, capricious, and an abuse of discretion where giving a grade of zero on an oral examination was authorized by the rules of the commission, nothing in the record indicated that the commissioner meted out the grade of zero because of some feeling of ill will or bad faith toward the candidate, the testimony of the commissioner indicated that he gave the zero grade because he found the candidate to be unsuitable for promotion, and at the time of the examination, the commissioner was unaware that a zero grade would, as it did, automatically disqualify a candidate from eligibility for promotion.*

Appeal from Genesee, Philip C. Elliott, J. Submitted Division 2 March 9, 1971, at Detroit. (Docket No. 7931.) Decided July 27, 1971.

Complaint by Hans Neuman and Bruce Harbin against the Flint Civil Service Commission, Bruce Howe, Louis Szabo, James Mills, Victor Nyberg, James Gorman, William Pribble, and Charles Crawford, for an injunction stopping any further promotions from an eligibility list and ordering the retaking of the oral portion of the examination, held

to determine eligibility for promotion, or, in the alternative, a retabulation of the oral examination scores. Injunction granted and a new oral examination ordered. Defendants Nyberg, Gorman, Pribble, and Crawford appealed. Affirmed.

*Draper, Daniel & Ruhala,* for defendants appellants Nyberg, Gorman, Pribble, and Crawford.

*Robert E. Weiss,* City Attorney, and *Wade D. Withey,* Deputy City Attorney, for defendant appellee Flint Civil Service Commission.

Before: Danhof, P. J., and Levin and McGregor, JJ.

Levin, J. Plaintiffs Hans Neuman and Bruce Harbin are police officers in the service of the City of Flint. They and other officers took a competitive civil service examination for the purpose of determining an eligibility list for promotion. Neuman, Harbin, and two other officers were graded zero on the oral interview by one of the three Flint Civil Service Commissioners, Commissioner Alton Miller.

Under the rules of the commission, the final ranking of the candidates was to be based on a number of different scores weighted differently. A candidate's average service rating made up 20% of the final grade, the written test score 50%, and each of the three commissioner's ratings on the oral examination 10% for a total of 30%. This composite grade was then modified by a factor representing seniority.

Although Commissioner Miller's rating on the oral examination was to represent only 10% of the

composite grade, by grading plaintiffs Neuman and Harbin and the two other officers zero on the oral interview he, in effect, blackballed their applications: under the commission's rules, a candidate must have a score of at least 70% on the oral interview to remain on the eligibility list and it is mathematically impossible for the score to be 70% when a commissioner rates a candidate zero.

We agree with the circuit judge that Commissioner Miller grossly exceeded his authority and, therefore, affirm the judge's order directing that a new examination be conducted.

The circuit judge's findings of fact and opinion are, in part, as follows:

"In the summer of 1967, 18 Detective Sergeants were qualified to take competitive civil service examinations to determine merit (fitness and efficiency) for promotion to three positions available then as Detective Lieutenant. The examinations would also establish an eligibility list for later promotions in the next two years.

"On September 14, 1967, after oral examinations had been given by the then Civil Service Commissioners, Marlon Butler, Dale Riker, and Alton Miller, the results were announced as shown in column 6 in the following self-explanatory tabulation (p 251):

"For months, Commissioner Miller's scoring of the oral examinations of four candidates 'zero' was known only to himself and the chief administrator of the civil service department. In September, as a result of the rankings Sergeant Mills, Szabo, and Howe were appointed to fill the vacancies; their appointments are permanent. Later in 1967, events occurred that caused the civil service commission to disclose the ratings of each commissioner on the oral examinations, and, almost immediately, plain-

| "1. Name as Ranked Before Oral Exams | 2. Seniority | 3. 20% of Average Service Rating | 4. 50% of Written Test Score | 5. 10% of Each Oral Exam. Rating | | | 6. Rank After Orals | 7. Rank Without Miller's | 8. Rank With 6.9 for Zero |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Butler | Riker | Miller | | | |
| Mills | 18 | 20.00 | 41.58 | 7.5 | 8.9 | 10.0 | 1 | 1 | 1 |
| Neuman | 20 | 19.44 | 36.42 | 8.0 | 8.8 | Zero | F* | 3 | 5 |
| Szabo | 16 | 20.00 | 39.40 | 8.0 | 9.2 | 9.0 | 2 | 2 | 2 |
| Howe | 14 | 20.00 | 40.49 | 8.3 | 9.0 | 9.6 | 3 | 4 | 3 |
| Nyberg | 18 | 20.00 | 35.87 | 8.0 | 8.4 | 9.8 | 4 | 7 | 4 |
| Harbin | 20 | 18.55 | 35.06 | 9.0 | 8.75 | Zero | F* | 5 | 6 |
| Gorman | 18 | 20.00 | 35.33 | 7.5 | 8.4 | 8.7 | 6 | 9 | 8 |
| Kaza | 14 | 20.00 | 38.86 | 7.7 | 7.9 | 8.0 | 9 | 13 | 11 |
| Pribble | 18 | 20.00 | 34.79 | 7.8 | 8.4 | 9.0 | 5 | 10 | 7 |
| Stump | 17 | 19.23 | 36.42 | 8.1 | 8.7 | Zero | F* | 8 | 12 |
| Bannister | 14 | 19.67 | 38.86 | 8.9 | 9.1 | 7.2 | 7 | 6 | 9 |
| Peek | 17 | 19.10 | 36.14 | 7.4 | 8.9 | Zero | F* | 12 | 13 |
| Crawford | 14 | 20.00 | 38.05 | 8.1 | 8.6 | 8.4 | 8 | 11 | 10 |
| Foley | 13 | 20.00 | 37.77 | 7.7 | 8.1 | 7.6 | 10 | 14 | 14 |

* F stands for Failure

tiffs consulted their attorney, who commenced suit in about 60 days and who obtained an injunction, without real opposition by the city, against further permanent promotions during the pendency of this suit. It was agreed by all parties that four other vacancies that had occurred since the examinations, could be filled *provisionally* during, and depending upon the outcome of this lawsuit. Those so appointed are Sergeants Nyberg, Pribble, Gorman and Bannister.

"By the commission's rules, the minimum passing score is 70%. Therefore, a zero prevents that candidate from passing. Even if given 100 by each of the other raters he could not have better than 66–2/3%. Failure to pass the oral examination makes that person ineligible for promotion until new examinations have been given (in not less than one year nor more than two years) no matter how superior may be that person's written examination results, seniority, and service ratings.

"The plaintiffs are obviously poised and handsome men of character and intelligence who are certainly entitled to a passing mark in the oral examination personality contest. We note that Sgt. Harbin was given the highest fitness rating given to any candidate by the chairman of the commission, Marlon Butler, and that Sgt. Neuman was placed in the top half of the candidates by both Commissioners Butler and Riker.

"The 'zero' rating of plaintiffs by former Commissioner Miller was a 'blackball' and it was illegal, unreasonable, unfair, discriminatory, arbitrary, and an abuse of his discretion.

"It is apparent, however, that the 'zeros' given to plaintiffs and two others have not caused erroneous appointments of Lt. Mills, Lt. Szabo, and Lt. Howe. They would have received three of the

seven appointments even if every 'zero' had been 100. A court order requiring their removal must be by mandamus (GCR 1963, 714), but that remedy 'is discretionary and such a writ will issue against public officials only to compel the enforcement of a clear legal duty'. Livonia Drive-In Theatre v. Livonia (1961), 363 Mich 438, 446. These defendants may have a judgment of no cause for action, without costs due to the public question involved.

"The defendants who have received the 'provisional' appointments contend that, if Miller's scoring be found to be illegal, plaintiffs have been guilty of laches. However, that affirmative defense 'depends not on mere lapse of time, but principally on the requisite of intervening circumstances which would render inequitable any grant of relief to the dilatory plaintiff'. *Lewis* v. *Poel* (1965), 376 Mich 167. We find neither dilatory delay nor any harm to these defendants resulting from what little lapse of time there was.

"The court has considered reranking the candidates as shown in the foregoing tabulation column 1 (no oral grades considered), column 7 (all of Miller's grades omitted), and column 8 (replacing Miller's 'zeros' with a maximum flunking grade of 69), but each approach has different results, especially as to places 7 to 13, and no one of these methods of reranking seems clearly superior to the other methods.

"Therefore, the court will order new oral examinations, of the persons named below, by the present Civil Service Commissioners who shall rate each candidate's fitness and suitability for the position fairly and legally by judging each group member separately and reasonably evaluating his traits and qualities as stated in the rules of the commission. One-tenth of each such rating shall be added to the following sums of weighted written test score, sen-

iority, and weighted service ratings to determine
final rank and eligibility:

| "Neuman | 75.86 | |
|---------|-------|---|
| "Nyberg | 73.87 | |
| "Harbin | 73.61 | (These figures are to |
| "Gorman | 73.33 | be checked by the |
| "Kaza | 72.86 | parties and the Civil |
| "Pribble | 72.79 | Service department |
| "Stump | 72.65 | and they may be cor- |
| "Bannister | 72.53 | rected by motion if |
| "Peek | 72.24 | filed by July 21, |
| "Crawford | 72.05 | 1969.) |
| "Foley | 70.77" | |

While we should be slow to interfere with a civil
service commission's grading of candidates for civil
service positions, the challenge here is not so much
to the determination of the Civil Service Commis-
sion as it is to the actions of one of the three com-
missioners who, we are satisfied, preempted the
authority of the entire Civil Service Commission.

Commissioner Miller had the power and respon-
sibility, together with the other two commissioners,
to grade the candidates. It was not, however, for
him to decide, to the exclusion of the other two
commissioners and the other factors to be con-
sidered, whether a candidate would be promoted.
He did not enjoy a veto or the power to blackball a
candidate.

The appellants argue that each of the commis-
sioners was empowered to give any grade on the
percentage scale, including zero. However, the
zeros given by Commissioner Miller did not reflect
a considered evaluation of the candidate's ability
based on a 100% scale. Commissioner Miller's own
testimony makes clear that his zeros did not reflect
a judgment that the candidates who received the

zeros were totally without qualification,* but, rather, his personal opinion that they should not be promoted.

By assigning zeros to those he thought should not be promoted, Commissioner Miller, through the leverage of the rule requiring a 70% grade on the oral interview to receive a passing grade on the entire examination, made his own preference the sole determinant of promotional eligibility to the exclusion of all other factors and the judgment of his fellow commissioners, thereby depriving the candidates and the public of the collective judgment of the commission as a whole.

It is apparent that Commissioner Miller misconceived his function, and that his zeros undermined a carefully-balanced and designed structure for determining promotional eligibility.

The circuit judge correctly concluded that a new examination should be ordered and that upon such new examination no commissioner should be permitted to arrogate to himself the ultimate decision which clearly under the commission's rules is to be made after consideration of a number of factors and should constitute the composite and collective judgment of all three commissioners, not just one.

Affirmed.   Costs to appellees.

McGregor, J., concurred.

Danhof, P. J. (*dissenting*).   I dissent from the majority opinion for the following reasons:

---

* Commissioner Miller testified at a circuit court hearing that he did not realize that a zero would eliminate a candidate from consideration. This, coupled with the fact that Commissioner Miller failed to indicate any basis for his ratings on the grading forms and failed to comply in the least with the suggested procedure for evaluating a candidate upon oral interview, underscores the arbitrariness of his zeros and demonstrates that they were not a *grade.*

In the summer of 1967, a competitive examination was given for the purpose of determining a list of applicants who were eligible for promotion to the position of detective-lieutenant with the city police department. Those candidates who passed the written examination were invited to appear before the three local civil service commissioners for oral examination. At the oral examination, four of the candidates, among them the plaintiffs herein, were given a grade of zero by one of the commissioners. A grade of zero made it mathematically impossible for these candidates to pass the oral examination; failure to pass the oral examination automatically disqualified the candidate from eligibility for promotion.

Plaintiffs asserted at trial that the commissioner, by giving grades of zero, failed to comply with the rules and regulations of the civil service commission, and that these grades were arbitrary and capricious. The trial court found that the commissioner's actions were illegal, arbitrary, capricious, and an abuse of discretion.

A review of the record and the rules of the Civil Service Commission indicates that giving a grade of "zero" on an oral examination is authorized by the commission. The manner in which the commissioner marked the rating form is in substantial compliance with the commission's rules, and not an abuse of discretion.

There is nothing in the record which would indicate that the commissioner meted out the grades of zero out of some feeling of ill will toward the candidates, or in bad faith. The testimony of the commissioner indicates that he gave the "zero" grades because he found the candidates to be unsuitable for promotion; at the time of the examination he was unaware that a grade of zero would automatically

disqualify a candidate from eligibility for promotion.

The trial court acted without jurisdiction when it substituted its judgment as to the suitability of the candidates for that of the civil service commissioner; there being no substantial testimony that the commissioner's determination was made with a malicious intent or in bad faith. See *Bischoff* v. *County of Wayne* (1948), 320 Mich 376.

Therefore, I would reverse and remand.