**Millard BASS, Plaintiff,**

**v.**

**Werner SPITZ, Individually and as Wayne County Medical Examiner, and the County of Wayne, Defendants.**

**Civ. A. No. 78–71712.**

United States District Court,
E. D. Michigan, S. D.

March 23, 1981.

---

1. *Cf. with Wilson v. Dake Corp.*, 497 F.Supp. 1339 (E.D.Tenn.1980).

Robert K. Tanenbaum and Jack L. Gruenstein, Philadelphia, Pa., Gerald I. Krafsur, Southfield, Mich., for plaintiff.

John J. McCann and Dean Koulouras, Asst. Corp. Counsel for Wayne County, Detroit, Mich., for defendants.

## OPINION

FEIKENS, Chief Judge.

Plaintiff Dr. Millard Bass was employed as an Assistant Medical Examiner in Wayne County, Michigan. He brought this action for damages arising out of the termination of that employment. This opinion supplements certain rulings which I made before the case was submitted to the jury.

Plaintiff was a non-probationary employee of Wayne County, protected by the Michigan County Civil Service Act, Mich.Comp. Laws §§ 38.401–.428 (Mich.Stat.Ann. §§ 5.1191(1)–(28.1) (Callaghan 1973)), and by the Rules of the Wayne County Civil Service Commission. On May 14, 1976, he was "indefinitely suspended"[1] by his appointing authority, Dr. Werner Spitz, pending investigation into charges that he may have mutilated dead bodies.[2] A copy of the suspension notice was mailed to plaintiff at his home address.

On the day of his suspension, plaintiff was in another part of the country, sitting for a certification exam conducted by the American Board of Pathology. Two days later, on May 16, he returned to Detroit. When he arrived at Detroit Metropolitan Airport, he discovered that his suspension was receiving extensive coverage by the local news media. Before he left the airport, he wired a letter of resignation to Dr. Spitz.

Plaintiff moved from Detroit to another part of the country, and began to set up a private medical practice there. He soon learned that criminal charges had been filed against him in Detroit, arising out of the same allegations which had led to his suspension. He returned here to defend himself. Four counts of body mutilation were later dismissed at the preliminary examination for lack of probable cause.

This action has evolved considerably since it was first filed in 1978.[3] In its present posture, plaintiff presents four claims against Wayne County:

1. The suspension notice stated that it was an "indefinite suspension." Rule 14, section 2, of the Wayne County Civil Service Rules provides that such a suspension is "considered as a removal." The precise terminology is not important.

2. Mutilation of dead bodies is a felony punishable by imprisonment for up to ten years, or a fine of up to $5,000. Mich.Comp.Laws § 750.-160 (Mich.Stat.Ann. § 28.357 (Callaghan 1962)).

3. The original complaint also named Dr. Spitz as a defendant, and stated causes of action for intentional infliction of mental distress and tortious interference with contract. Spitz counterclaimed against plaintiff. These claims have all been dropped during the course of the litigation.

(a) he claims that he was maliciously prosecuted under the four felony counts;

(b) he claims that he was deprived of his property interest in his job as Assistant Medical Examiner without due process of law;

(c) he claims that allegations made at the time of his suspension deprived him of his liberty without due process of law; and

(d) he claims that he was discharged in violation of his employment contract.

Jurisdiction over the state law claims is based on diversity of citizenship.

For the reasons outlined on the record, and elaborated below, I granted Wayne County summary judgment on the property interest claim, dismissed the contract claim, and submitted the malicious prosecution and liberty interest claims to the jury.[4]

PROPERTY INTEREST

By the close of the proofs, the evidence had established that, for a period of up to twenty days, plaintiff could have with-drawn his resignation and appealed his suspension to the Wayne County Civil Service Commission.[5] If he had done so, the Commission would have provided him with a hearing within two weeks. Plaintiff does not now contend that such a hearing would have been inadequate.[6] He argues that he was in a state of duress when he resigned, and that this duress continued for more than twenty days. There is evidence from which the jury could conclude that this is true.[7] Because this duress allegedly prevented him from acting in his rational self-interest, he claims that he did not have an adequate opportunity for a post-suspension hearing.

■ If plaintiff was not under duress when he resigned, he could not claim a violation of his right to due process. Due process requires only that he have been given an opportunity to be heard. If he knowingly declined to take advantage of that opportunity, his right to due process simply was not infringed.[8] E. g., Stewart

---

4. The jury found for plaintiff on the claim of malicious prosecution, and awarded damages of $600,000. They found for defendant on the liberty interest claim.

5. See Mich.Comp.Laws § 38.416 (Mich.Stat. Ann. § 5.1191(16) (Callaghan 1973)).

6. In his first trial brief, plaintiff argued also that the Civil Service Rules were unconstitutional. He has not pressed that argument in any of the briefs which he has submitted since that time, nor in oral argument. I conclude that he has withdrawn that contention.

7. The evidence of duress is far more extensive here than in most employee discharge cases. Plaintiff has offered into evidence dozens of local and national news accounts published at the time of his suspension, several of which contain such superlatives as "later-day Frankenstein".

8. It is important to distinguish this type of situation from those in which the issue is exhaustion of administrative remedies. In *Suckle v. Madison General Hospital*, 499 F.2d at 1367, the Seventh Circuit explained this distinction:

Plaintiff has no federal right to be on the staff of Madison General Hospital. The only federal right he claims is the right to a due process hearing before denial of reappointment. It is therefore incorrect to characterize the proffered hearing as a remedy which must be exhausted; for federal purposes, it is the right which he seeks. He cannot sue in federal court to secure a right which he declined when it was voluntarily offered to him. The issue is properly defined as exhaustion of remedies only when the alleged unconstitutional conduct is something other than the failure to provide a due process hearing. E. g., *Wagle v. Murray*, 546 F.2d 1329 (9th Cir. 1976) (teacher allegedly dismissed for protected First Amendment activities); *Chisley v. Richland Parish School Board*, 448 F.2d 1251 (5th Cir. 1971) (teacher allegedly dismissed on account of his race); *Hayes v. Cape Henlopen School District*, 341 F.Supp. at 835–36 (secretary not rehired allegedly because of spouse's union activities). In such cases, it is not clear whether exhaustion of remedies is required. *Compare Sonntag v. Dooley*, 495 F.Supp. 348 (N.D.Ill.1980) (exhaustion required) *with Steadman v. Hundley*, 421 F.Supp. 53 (N.D.Ill.1976) (exhaustion not required).

Some courts have failed to recognize that an employee who waives a constitutional hearing simply fails to state a claim that his right to procedural due process has been violated. In *Whitner v. Davis*, 410 F.2d 24, 28–29 (9th Cir. 1969), the Ninth Circuit explained that an employee must "exhaust" remedies which "forestall" the constitutional violation. The Third Circuit has suggested that such a claim is not "ripe". *United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226, 1232 n. 5 (3d Cir. 1977). These variations in language lead to the same

v. Bailey, 556 F.2d 281, 285–86, rev'd on other grounds, 561 F.2d 1195 (5th Cir. 1977); Field v. Boyle, 503 F.2d 774, 778–79 (7th Cir. 1974); Suckle v. Madison General Hospital, 499 F.2d 1364, 1367 (7th Cir. 1974); Jackson v. Fulton-DeKalb Hospital Authority, 423 F.Supp. 1000, 1003–05 (N.D.Ga. 1976), aff'd mem., 559 F.2d 1214 (5th Cir. 1977); Hayes v. Cape Henlopen School District, 341 F.Supp. 823, 833–35 (D.Del.1972). Cf. Bishop v. Tice, 622 F.2d 349, 356 (8th Cir. 1980) (same principle in a Bivens action by a federal employee). Thus, plaintiff's position is very narrow. He contends that in those rare cases when an employee is in a protracted state of duress, due process requires that he be permitted to withdraw his resignation after the expiration of a twenty-day limitation which would otherwise apply.

I find no explicit authority on whether the Constitution requires such a "duress extension". In Van Arsdel v. Texas A&M University, 628 F.2d 344 (5th Cir. 1980), the Fifth Circuit apparently assumed that such a requirement exists. Van Arsdel was a tenured university professor, who was charged with sexual harassment. His department head met with him, and explained that the university was likely to bring dismissal proceedings against him. Van Arsdel instead chose to resign. The court held that, as a matter of law, Van Arsdel was not under duress when he resigned. They did not discuss the possible constitutional significance of the opposite conclusion. Cf. Bishop v. Tice, 622 F.2d 349 (8th Cir. 1980) (federal employee alleged that he was coerced into resigning by illegal threats, and did not exhaust his federal civil service remedy because he was under duress; court gave him an action for damages against the people responsible for his failure to exhaust, but refused to supplement the federal administrative remedy with a Bivens cause of action).

■ Despite the absence of authority on this particular point, I am persuaded by plaintiff's position. If he could not act in his own self-interest when he submitted his resignation, it would be unfair not to permit him to withdraw it as soon as he recovered, provided that he did so within a reasonable time after it was submitted. The length of the necessary "duress extension" to the twenty-day rule could vary with the circumstances. If enough time had passed, it might be reasonable for the Civil Service Commission to permit withdrawal of the resignation only if plaintiff would waive his right to back pay,[9] and settle for just reinstatement. It would be unfair, however, to deprive him absolutely of his right to seek reinstatement because he did not withdraw his resignation within twenty days, without regard to his state of mind during those twenty days or the absence of any harm to Wayne County from withdrawal at a later date.

■ Nonetheless, I must grant summary judgment for Wayne County on this claim. Even if the jury found that plaintiff was under duress for more than twenty days, he has offered no proof that the Civil Service Commission refused to allow him to withdraw his resignation once he was able to ask them to do so. See Bishop v. Tice, 622 F.2d at 361–62 (Gibson, J., concurring in part and dissenting in part). Indeed, it is conceded that plaintiff never asked permission to withdraw his resignation. I cannot assume that the Commission would have refused to extend their twenty-day rule, even though plaintiff was under duress. The federal civil service system provides for equitable extension of such time limits. 5 C.F.R. § 1201.12 (1980). Employees in that system have often withdrawn resignations submitted under duress. E. g., Wilson v. Schultz, 475 F.2d 997 (D.C. Cir. 1973); Goodman v. United States, 424 F.2d 914 (D.C. Cir. 1970); Pascal v. United States, 543 F.2d 1284 (Ct.Cl.1976); Gratehouse v.

---

result, but confuse the issue unnecessarily. It is simpler to state that an employee has not been deprived of a right he has voluntarily waived.

9. Civil Service Rule 14, section 9(a), permits a discharged or suspended employee to postpone his appeal hearing if he agrees to just such a concession.

United States, 512 F.2d 1104 (Ct.Cl.1975); Cunningham v. United States, 423 F.2d 1379 (Ct.Cl.1970). These examples suggest that the Commission might well have agreed to extend its twenty-day limit, and grant plaintiff a hearing. If they had done so, they would still have been able fully to protect plaintiff's interest in his job. Mich. Comp.Laws § 38.416 (Mich.Stat.Ann. § 5.1191(16) (Callaghan 1973)); Wayne County Civil Service Commission Rule 14, section 10. Plaintiff has failed to prove that he was denied an adequate hearing. He simply failed to ask for one.

 Different considerations govern plaintiff's liberty interest claim. The purpose of a liberty interest hearing is to provide an employee an opportunity to clear his reputation of the stigma of false accusations. Codd v. Velger, 429 U.S. 624, 629, 97 S.Ct. 882, 885, 51 L.Ed.2d 92 (1977) (per curiam); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 n.12, 92 S.Ct. 2701, 2707 n.12, 33 L.Ed.2d 548 (1972). The guarantee of reinstatement within a reasonable time and an award of back pay is almost always sufficient to protect an employee's property interest in his job. Arnett v. Kennedy, 416 U.S. 134, 167–71, 94 S.Ct. 1633, 1650–52, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part). Such a guarantee is not necessarily sufficient to protect an employee's reputation. An insidious type of damage sets in when someone's professional reputation is questioned. At a later date, this damage may be difficult to detect, much less correct. See Carey v. Piphus, 435 U.S. 247, 262, 98 S.Ct. 1042, 1051, 55 L.Ed.2d 252 (1978). If it can be corrected, some kind of affirmative injunctive relief may be necessary. Thus, a remedy may be constitutionally adequate in a

particular case to protect an employee's property interest, but inadequate to protect his liberty.

In this case, the Civil Service Commission was authorized only to reinstate plaintiff and award him back pay. Civil Service Commission Rule 14, section 10. If such a remedy had been provided within a very short period of time after plaintiff's suspension, it would have been adequate to protect his liberty interest. It almost certainly would have counteracted the publicity which surrounded the suspension. Therefore, if the plaintiff did not resign under duress, or his duress subsided within twenty days, then he waived his right to the due process liberty hearing of which he claims he was deprived.

If plaintiff was under duress for more than twenty days, due process still entitled him to withdraw his resignation and contest his suspension, if he asked to do so as soon as his duress subsided.[10] If he had asked, however, the hearing which the Civil Service Commission would have provided would not have been adequate. After someone's reputation has been harmed by adverse publicity, and this damage has had time to "settle", more aggressive remedies are necessary to clear the reputation than would have been necessary if the remedy had been more prompt. After more than twenty days had elapsed, reinstatement and back pay would not have undone the large volume of local and national publicity. If plaintiff was under duress for more than twenty days, he would still have been deprived of his liberty without due process, even if he had withdrawn his resignation and appealed his suspension as soon as he was able to do so.[11] Thus, his failure to act does not change his constitutional claim.

10. When a property interest is involved, due process may not require an employer to permit withdrawal of a resignation if too much time has passed, even if the employee previously has been under duress. The employer has an interest in maintaining a stable work force, free from the disruption caused by reinstatement of an employee who resigned in the remote past. In a liberty interest case, however, this consideration is not present because reinstatement is not sought. Also, the employee's interest in

being employed in his profession is greater than his interest in any particular job. Thus, a liberty hearing may need to be provided if the employee seeks it as soon as his duress subsides, no matter how much time has passed.

11. Although discussions of due process generally focus on the adequacy of fact-finding procedure, the availability of an adequate remedy is also an aspect of this constitutional guarantee. E. g., Anderson National Bank v. Luckett,

This result does not place an unreasonable burden on Wayne County. In a typical case, only an employee's property interest is at stake. In such a situation, the Civil Service Commission may rely upon a resignation which appears to be voluntary, without fear of liability. If the employee later claims that he resigned under duress, the Commission's reliance on the face of the resignation up until that time still complies with due process requirements.

Only in very rare cases, the Commission must do more to avoid completely the risk of liability. If an employee resigns in the midst of extensive adverse publicity, it is foreseeable to the Commission that the employee's ability to seek other work may be impaired, and that his resignation may have been the product of duress. In such cases, the County could avoid liability by additional notice to the employee, which would insure that the liberty hearing was held promptly, or by providing a broader range of remedies.

## BREACH OF CONTRACT

Plaintiff also claims that defendant violated his contractual employment rights. Various pleadings characterize this as breach of contract, wrongful discharge, or constructive discharge. Whatever it is, it must be dismissed. Michigan courts would not hear such a claim.[12]

Under the Michigan County Civil Service Act, *supra*, plaintiff had the right to appeal his suspension to the Wayne County Civil Service Commission. Mich. Comp.Laws § 38.416 (Mich.Stat.Ann. § 5.1191(16) (Callaghan 1973)). If he had done so, the Commission's decision would have been subject to review by Wayne County Circuit Court. Mich.Const. art. 6, § 28; Mich.Comp.Laws § 600.615 (Mich. Stat.Ann. § 27A.615 (Callaghan 1976)). The Circuit Court could have reversed the Com-

mission's decision only if it was not "supported by competent, material and substantial evidence on the whole record." *Martin v. Wayne County Civil Service Commission*, 16 Mich.App. 536, 168 N.W.2d 419 (1969). Eventually, limited review by certiorari would have been available in the Michigan Supreme Court. *See Bischoff v. County of Wayne*, 320 Mich. 376, 31 N.W.2d 798 (1948). If plaintiff was able to bring an independent action challenging his suspension, this administrative system, with its policy of narrow judicial review, would be circumvented completely. I conclude that, if the question was presented, the Michigan Supreme Court would decide that this appeals route was plaintiff's only state law remedy.

In *Bays v. State Police*, 89 Mich.App. 356, 280 N.W.2d 526 (1979), state police officers brought an action in the Court of Claims for compensation for standby time, without having exhausted their civil service grievance procedure. The Court of Appeals held that exhaustion was necessary, even though plaintiffs described their action as a "claim for compensation for past services", rather than an appeal. *Accord, Plec v. Liquor Control Commission*, 322 Mich. 691, 34 N.W.2d 524 (1948). Although the legal status of the state Civil Service Commission is different from that of its local counterparts, *see* Mich.Const. art. 11, § 5, the reasons for restricting an employee to his state civil service remedy also apply to county civil service. *E. g., Lesniak v. Fair Employment Practices Commission*, 364 Mich. 495, 111 N.W.2d 790 (1961) (value of administrative expertise); *Ypsilanti v. Civil Rights Commission*, 55 Mich.App. 103, 221 N.W.2d 923, *modified on other grounds*, 393 Mich. 254, 224 N.W.2d 281 (1974) (value of reducing crowded dockets); *Robinson v. Department of State*, 20 Mich.App. 231, 173 N.W.2d 799 (1969) (need to avoid large back pay claims after protracted litigation). The

321 U.S. 233, 246, 64 S.Ct. 599, 606, 88 L.Ed. 692 (1944). *See also Dombrowski v. Pfister*, 380 U.S. 479, 485–92, 85 S.Ct. 1116, 1120–24, 14 L.Ed.2d 22 (1965).

**12.** Dismissal of such cases is generally grounded either upon failure to exhaust administrative remedies, *e. g., Bays v. State Police*, 89 Mich.

App. 356, 280 N.W.2d 526 (1979), or lack of subject matter jurisdiction, *e. g., Elgammal v. Macomb County Intermediate School District Board of Education*, 83 Mich.App. 444, 268 N.W.2d 679 (1978). The principle is the same, whichever language is used.

**188**

Court of Appeals has applied this doctrine of exclusive jurisdiction to county civil service in another context, *Burton v. Velosky,* 22 Mich.App. 646, 177 N.W.2d 679 (1970) (county employee challenged civil service commission's procedure regarding appointments), and to a discharge under a similar administrative procedure established for teachers, *Elgammal v. Macomb County Intermediate School District Board of Education,* 83 Mich.App. 444, 268 N.W.2d 679 (1978) (discharged teacher must appeal to teacher tenure commission, not directly to circuit court). Exclusive jurisdiction is necessary if county civil service commissions are to carry out their statutory duties. *See* Mich.Comp.Laws § 38.412 (Mich.Stat.Ann. § 5.1191(12) (Callaghan 1973)). The doctrine should be applied here. *See generally Crowe v. County of Wayne,* 365 Mich. 656, 114 N.W.2d 240 (1961) (Black, J., concurring); *Doyle v. Kammeraad,* 310 Mich. 233, 17 N.W.2d 165 (1945).